**Joul SMALL**

v.

**The UNITED STATES.**

**No. 190–70.**

United States Court of Claims.

Dec. 12, 1972.

Robert J. Reinstein, Baltimore, Md., attorney of record for plaintiff; J. Francis Pohlhaus, Washington, D. C., and Nathaniel R. Jones, New York City, of counsel.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

NICHOLS, Judge:

This suit for back pay is before us on cross motions for summary judgment, with supporting documents. Our conclusion is that defendant is entitled to summary judgment, for reasons that will appear.

The plaintiff, who is black, has been an employee of the Grounds Maintenance and Miscellaneous Services Section, Engineering Division, of the Veterans Administration Center at Dayton, Ohio, since 1951. He was a Kitchen Helper, CPC–2 at first, and was a WA–3 from 1957 to 1968, but became a WA–4 in 1969 and a WB–6 in 1970, as a result

of promotion actions following his complaint. April 4, 1968, when his actual work was digging graves, he filed this complaint with the VA alleging racial, religious, and national origin discrimination against him, naming 10 Caucasians as the discriminators, and requesting the following remedies:

1. Cease and desist discrimination reprisal against me.
2. I would like to be treated as a human being as white employees.
3. I would like better working conditions and modern equipment to work with.
4. I would like to participate in a training program for advancement.

He requested a complete and formal investigation and hearing.

The Civil Service Commission had completed its action in this case before passage of the Equal Employment Opportunity Act of 1972, P.L. 92–261, 86 Stat. 103, approved March 24, 1972, and plaintiff also had sued here before that date. The parties agree that that Act, adding new provisions respecting discrimination charges by Government employees, by their terms does not either diminish or enlarge our jurisdiction of this particular case. Whatever it was before March 24, 1972, it still is as we all agree. The parties also join in opposing any remand to the Civil Service Commission for additional findings.

For many years before March 24, 1972, a United States Government employee could have looked to a series of Executive Orders for safeguards against discrimination on account of race. The earliest one relevant here is E.O. 9980, July 26, 1948, 13 F.R. 4311. There followed E.O. 10590, January 19, 1955, 20 F.R. 409; E.O.10925, March 8, 1961, 26 F.R. 1977; E.O. 11246, September 24, 1965, 30 F.R. 12319, and E.O. 11478 August 12, 1969, 34 F.R. 12985. All declare a rule and policy against racial discrimination in Federal employment, and all prescribe procedures for processing of discrimination complaints, varying somewhat from Order to Order. If it is material, none of them mention possible lawsuits. The provision in the Civil Rights Act of 1964, 5 U.S.C. § 7151 (Supp. V 1965–69), which reads:

It is the policy of the United States to insure equal employment opportunities for employees without discrimination because of race, color, religion, sex, or national origin. The President shall use his existing authority to carry out this policy.

may be taken as ratifying such of these Orders as had then been issued, authorizing similar ones for the future, and placing entire reliance on them to prevent discrimination in Federal employment. This 1964 Act contained provision for complaints and lawsuits against private employers, but they were not then made applicable to the United States.

The then Executive Order, 11246, effective in 1968, called for an investigation by the agency complained against, followed by a hearing. The investigation of plaintiff's complaint was exhaustive, with many statements and affidavits. Mr. Wells, Employment Policy Specialist, made the following summary of what it revealed:

This is with reference to the complaint of discrimination because of race of Mr. Joul Small, Grounds Maintenance and Miscellaneous Services Section (Cemetery), Engineering Division, against officials of the VA Center, Dayton, Ohio.

On the basis of a review of the total record of the matters raised in this complaint I have concluded that there is no evidence of record to substantiate Mr. Small's contention that he was subjected to personal racial discrimination by the Center Director, the Assistant Director, the former Personnel Officer or by the former supervisory personnel whom he had accused of being discriminatory toward him. However, the evidence does corrobo-

rate his contention that on several occasions in the years past he had requested on-the-job training to improve his manual skills. I find that the reasons given for the nonselection of Mr. Small for such training rested upon questionable grounds.

Further, the testimony and available information of record indicates Mr. Small's failure of selection for position of Laborer WA–3 in 1951 and for position of Gardner WA–4 in 1956. Caucasians were selected for these positions. In the latter case the person selected came from outside the station. In the absence of additional information of record we find that the nonselection of Mr. Small rested upon nonpersuasive grounds.

Accordingly, it is my decision that Mr. Small's race could have been a factor of consideration in these matters involving his failure to be given on-the-job training and his failure of promotion. Mr. Small's charge of discrimination is not disproved regarding these matters.

The record indicates that discussion of the findings of investigation of Mr. Small's complaint included consideration of this information which has resulted in his promotion to Laborer-Equipment Operator WA–4, and an opportunity for his participation in an advanced training program for progressive advancement in the field of Equipment Operator.

Thus, the corrective action taken by the Hospital Director that Mr. Small be promoted to WA–4 and provided certain training in order to meet eligibility requirements for advancement is considered to be the appropriate remedial action.

Although Mr. Small requested a hearing as well as the investigation of his complaint, I have decided not to honor his request for a hearing. As a result of the review and discussion of the report of investigation at the station, I consider the finding of discrimination because of race and the remedial action taken, an appropriate disposition of the complaint.

W. C. WELLS
Employment Policy Specialist

Though not mentioned in the summary, the full record shows the VA also selected a Caucasian over plaintiff's unsuccessful application to be Gardener WA–6 in 1961. The same year the position of the same person was redesignated "Supervisor" Gardener WAS–8. It was not found whether plaintiff was "within reach". Plaintiff applied for plasterer's positions WA–5 three times in 1954–57 and other blacks were selected. He applied for a truck driver position and a plasterer's position in 1967 and 1968 and was deemed qualified, but each time another black was selected. Apparently in that activity promotion vacancies were few and when there were any the list of qualified applicants was long.

The VA Discrimination Complaints Officer, Mr. Holland, reviewing this record, found:

> * * * there is evidence to substantiate his charge that race was a factor in his failure to obtain on-the-job training to improve his skills and nonselection for promotion. * * *

He noted that Mr. Small had been promoted to WA–4 and given a chance to participate in a training program to improve his skill. He considered these to be

> "appropriate remedial action"

In view of the appropriate disposition of the complaint he decided not to allow a hearing. The record includes a similar report of the same date to the Civil Service Commission. In this Mr. Holland further said:

> * * * Further, the testimony and available information of record indicates complainant's failure of selection for two positions for which he was qualified. In each matter of promotion a Caucasian was selected and the most recent position vacancy was filled by a Caucasian from outside the station. * * *

He reiterated that the promotion and training were an appropriate disposition of the complaint, and a hearing had been denied for that reason.

The record reflects, as stated above, that in 1951 and 1956 two Caucasians were appointed to positions above plaintiff's in the Division to which he was attached, the 1956 one being from "outside the station." (The reason why his being from "outside the station" added to the enormity of the asserted discrimination is nowhere stated. We may take judicial notice that in Federal personnel practice a person from "outside the station" sometimes has a right to compete for a vacancy.) The files respecting these and all other relevant personnel actions prior to two years before the date of investigation (whether or not mentioned above) had been disposed of and were unavailable for review. Plaintiff was passed over in two other reviewable promotions for which he was recognized to be qualified, in 1967 and 1968, but in both instances the person selected was another black; therefore, these were not the instances Mr. Holland refers to. The record further reflects that plaintiff was represented by counsel during the entire period the complaint was pending.

Plaintiff, as was his right under the Executive Order appealed to the Board of Appeals and Review, Civil Service Commission (BAR). The appeal, dated February 26, 1969, says that the findings showed 15 years of discrimination respecting training and promotional opportunities, that plaintiff, though denied advancement beyond Grade WA–3, was qualified for WA–9, and therefore that the meager remedy granted, one step to WA–4, was grossly inadequate as remedial action. The remedy requested was that the BAR order immediate promotion to the grade WA–9 level.

The appeal does not mention the refusal to grant a hearing as a ground of appeal, and therefore the BAR could have taken it, and apparently did, as an election to rely on the record actually made, which was indeed voluminous.

The BAR decision, April 2, 1969, recites the decision above mentioned, summarizes the appeal, and notes that a training program had been set up for plaintiff in order to qualify him as a heavy equipment operator, and that as of January 25, 1969, he had received 152 hours of such training. It said in view of the foregoing affirmative steps, there was no further action which could be taken, and therefore, the appeal was denied.

This lawsuit followed. It asks for back pay from 1954 on the basis of a schedule of promotions counsel supposes plaintiff would have received, but for discrimination, WA–3 by 1954, WA–5 by 1958, WA–7 by 1961 and WA–9 by 1966, with back pay totalling $18,430 at the petition date.

■ A majority of us hold that whether or not we have jurisdiction, even if we do, in any event the decision of the BAR is not arbitrary or capricious and has the support of substantial evidence so far as it denied further relief. This is the only position that has the support of the majority of judges, and is stated in this opinion as the opinion of the court. When our jurisdiction is denied by a party, we are not required to decide whether we have jurisdiction or not if the case is submitted on cross motions for summary judgment, with documents, and we can see from these documents that the claim is without substance on its face. Monett v. United States, 419 F.2d 434, 190 Ct.Cl. 1 (1969), cert. denied, 400 U.S. 846, 91 S. Ct. 91, 27 L.Ed.2d 82 (1970). That is the situation here.

We consider first whether plaintiff was entitled to a hearing and should have had one. The relief may have been all the cognizant officials thought plaintiff originally asked for and was entitled to, but it was still less than he later demanded. His original complaint, never formally amended, though he had counsel, did not ask for any specific promotion, and certainly could have been read as asking for not more than he got, apart from the demand that he get bet-

ter working conditions, modern equipment, and to be treated as a human being. These were hardly susceptible of legal adjudication. If the demand for a hearing was valid, notwithstanding the relief granted, it certainly should have been asked of the BAR, or assigned to it as a ground for reversal, if we are to hold the BAR's not granting one or remanding the case for one, to be arbitrary or capricious.

We disregard, however, the failure to demand back pay in the BAR appeal, because plaintiff's counsel no doubt knew that such a demand, placed there, would have been futile. Allison v. United States, 451 F.2d 1035, 196 Ct.Cl. 263 (1971).

That plaintiff was long refused in-service training is supported by evidence, but there is nothing to show the refusal was discriminatory, in the sense that that training was given to those of the other race, similarly situated. Moreover, plaintiff's theory throughout was that he had qualifications for promotion, even without further training, and therefore it is difficult to identify non-training as the effective reason why plaintiff was not promoted when he was not. In his appeal, moreover he said he had actually been doing the work of a WA–9 for years. It would appear, in these circumstances, the appropriate remedy for denial of in-service training was to grant in-service training, which was promptly done, before completion of the investigation. If we awarded back pay, we would have to determine that plaintiff should have been in a higher grade than he was on some particular date, and therefore, the failure to train does not afford plaintiff a bypass around the question whether plaintiff's non-promotion was contrary to the applicable E.O. at any time.

Reading Mr. Holland's finding of two cases of discriminatory failure to promote the plaintiff, it has been shown that the cases he refers to must have been those that assertedly occurred in 1951 and 1956. Yet the record shows that the charges as to them could not be substantiated by the promotion files, which had been destroyed. Our attention is called to no statements based on recollection to support them either. It is mere supposition that these actions were discriminatory in any respect, even as favoring the man "from outside the station". The only actual fact in the record is that Caucasians were appointed to positions in the years mentioned. There is nothing to show what claim on the positions the Caucasians had; the destroyed files probably would have shown that. It appears that Mr. Holland, apparently in his zeal to justify the modest action taken, goes much beyond his documentary source, the investigative record. Mr. Wells has been quoted above. It appears he found *no* "personal racial discrimination" on the part of any of the persons named in the original complaint. Then in apparent contradiction, he goes on to recite the denial of on-the-job training, and the 1951 and 1956 supposed non-promotions. He seems to throw the burden of proof on the agency to disprove the charges, a burden that assuredly would have been difficult to sustain in the absence of the files.

We think the most obvious explanation of this Summary is that Mr. Wells changed function midway in writing it. After finding that plaintiff had no legal basis for his complaint, not having proved he was wronged by any specific personnel action, he puts on a conciliator's hat, and in that capacity recommends and obtains the adoption of certain measures. Both roles appear appropriate ones for him under the various Orders, as we develop more fully below. Mr. Holland misunderstands and misconstrues this Summary.

Defendant says these findings lack support in substantial evidence, and so far as concerns the alleged 1951 and 1956 discriminatory non-promotions, if they really are findings, this is plainly so. Defendant also denies that discrimination occurred against plaintiff at any time. This fact sharply distinguishes this case from Chambers v. United

States, 451 F.2d 1045, 196 Ct.Cl. 186 (1971), and *Allison, supra,* too, in both of which the majority thought that the defendant's concession that discrimination took place almost, if not entirely, removed the issue from the scope of judicial inquiry.

Mr. Holland chose to believe that personnel actions taken in 1951 and 1956, seventeen and twelve years before the filing of the complaint, were discriminatory, in face of the destruction of the files long prior to any complaint about them. He supposed he could not award back pay, so the legal consequences of his belief, apparent to him, were minimal, though it supported the action he took. Plaintiff, however, would start a hypothetical career from those dates, arriving at six years before action brought, 1964, already several grades above his then actual WB-3. This technique would appear to have limitless possibilities. If a person was in Federal service long enough, he might be given by counsel a hypothetical career, absent discrimination, that would make him a hypothetical Department head, Ambassador, or Supreme Court justice, with emoluments appropriate, before reaching the magic date six years before action commenced. We all know that in real life promotions bring people to the highest levels for which they are competent, or, according to a theory bandied about recently, at least half seriously, the lowest level for which they are incompetent, and what these levels are, for any person, can only be determined by actual trial and error. For these reasons, we have hitherto generally refused, in awarding back pay, to postulate supposititious promotions. See discussions in *Chambers* and *Allison, supra.* The exceptions must be produced otherwise than by the mere imagination of a court of law. A hypothetical promotion on top of a hypothetical promotion must be particularly suspect, and so also must be even a single hypothetical promotion awarded at so remote a date that the evidence has been lost, that once would have permitted a realistic test whether,

but for discrimination, the promotion would have been made actual.

Mr. Small himself stated he did the work of a WA-9 and possessed all its qualifications, and this, to be fair, distinguishes counsel's career projection herein from the supposed case that he had projected a Supreme Court justiceship or an Ambassadorship. The agency itself had determined he had qualifications above his grade, for certain positions. However, Mr. Wells and Mr. Holland evidently did not believe Mr. Small entirely for they considered in-service training necessary for him to meet "eligibility requirements" for positions above WA-4. Plaintiff's supervisor, Mr. Fishpaw (Caucasian) was a WA-6, and the fact finder rejected plaintiff's assertion that he did the same work as Mr. Fishpaw. Fishpaw was a "working foreman" over about six persons. When not supervising, he did the same work they did.

■■ Defendant before us takes the hard-nosed position that the record shows no substantial evidence of discrimination, not even enough to support the relief actually granted our plaintiff. Apparently, by this view, Mr. Wells and Mr. Holland were arbitrary and capricious in awarding the remedies they did. Defendant need not repudiate its officials in this manner. It overlooks the fact that there exist and must exist gray areas where nobody can properly be accused of legal wrong, yet officials are not moving affirmatively as the E.O.'s seem to require they must, to create a working environment that is fair and just to people of minority races, and others within the E.O.'s protection. Thus there will be cases where executive action is called for, within a broad discretion, but not judicial, and even among justiciable cases there will be some of a nature that prospective relief is called for, but not back pay. We read Mr. Wells and Mr. Holland as holding, rightly it would appear that Mr. Small's case was in that gray area, and that it was up to the Veterans Administration to move affirmatively to Mr. Small's assist-

ance, as it did. The ambience in the work area involved was apparently not favorable to the fair advancement of black people in the manner successive Presidents have desired and ordained. But, as Mr. Wells said, they could not pin the commission of a legal wrong on any official, *i. e.*, a demonstrably wrong personnel action. Therefore, they did not take the case out of the gray area. We believe, if award of back pay by us is ever to be justified in this class of case, it is where a clear-cut wrong is shown to have been done to the plaintiff, in a personnel action, at a time and place, and in a manner that can be identified. If the plaintiff has been wronged, somebody else must have done wrong. It may be, as with other legal wrongs, the result of mistake, or inadvertence, not deliberate evil necessarily. But a wrongdoer there must be. No one could have discriminated against plaintiff in a personnel action, intentionally or inadvertently, without violating the E.O. and therefore being himself a wrongdoer. If the fact finder, as here, exonerates all possible officials from "personal" wrongdoing, it must follow that "personal" wrong was not done. We conclude it follows the case is not appropriate for a back pay award, though no doubt it was for the administrative relief actually accorded.

This idea that a back pay award must be founded on a specific act of discrimination, by a specific official or officials, on a particular date, is not newly announced here. We foreshadowed it in *Allison, supra,* where defendant admitted discrimination in gross, but we remanded to the Civil Service Commission for findings as to specific promotions, considering vacancies, available funds etc., which were denied to plaintiffs by reason of discrimination.

 We all know that during much of the time the above cited E.O.'s were on the books, effective action to implement them was minimal. Career prospects in the United States Government for members of certain minority races remained poor, as they were for women generally. Any such member who has been in Federal employment as long as plaintiff herein probably has not done as well as a male, white, etc., person would have done. This of itself does not justify back pay founded on a schedule of imaginary promotions. Most cases will fall in the gray area, remediable only by the "continuing affirmative program" that E.O. 11478 mandates. P.L. 92–261 refers to this Order with approval, and puts the authority of Congress behind such programs. It is clear that in future under P.L. 92–261 a "personnel action affecting employees or applicants for employment" will trigger the remedies for employee grievances, and we take it this means real actions, not imaginary ones. It is also clear that back pay will not be automatic for everyone who has a valid grievance. It will be optional for the court to award it when "appropriate". It would be anomalous if the law prior to P.L. 92–261 afforded broader remedies, and mandated back pay for everyone discriminated against in gross rather than in specific personnel actions.

The plaintiff refers us to a part of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Assuming *arguendo* that it does grant the plaintiff rights that are relevant here, we think the short answer is that it does not make anything a wrong against plaintiff that is not also a wrong under the E.O.'s cited above. We bypassed our jurisdictional doubts and determined, supposing we had jurisdiction, plaintiff had not shown he had suffered any wrong legally remediable other than by the administrative measures actually taken. The conclusion must be the same whatever the source of plaintiff's right and whatever channel it flowed to him. If any case, the right is not to be discriminated against on account of race, and if plaintiff was not discriminated against, in a manner cognizable in a court of law, on account of his race, he cannot recover.

In *Allison, supra,* we remanded for specific findings, 451 F.2d p. 1039, 196 Ct.Cl. p. 271:

> \* \* \* which shall show, person by person, whether such person would have been promoted, when, and to what grade or grades, in light of such person's qualifications, the qualifications of competitors, the existence of vacancies, the availability of funds, and all other factors that would have properly influenced the exercise of discretion in the making of an actual promotion at the time a promotion was due. (Cite omitted.)

Our dissenters would have us do that here. The difference, however, is that plaintiff's case has already been examined in detail. A record and findings are already before us. Whatever else they show, they make it clear that a schedule of suppositious promotions would be an exercise of the imagination, without record support.

Accordingly the plaintiff's motion for summary judgment is denied, the defendant's motion for summary judgment is allowed, and the petition is dismissed.

SKELTON, Judge (concurring) :

I concur. However, I would dismiss the suit because we lack jurisdiction of the case for all of the reasons and because of the authorities set forth in my dissenting opinions in Chambers v. United States, 451 F.2d 1045, 196 Ct.Cl. 186 (1971) and Allison v. United States, 451 F.2d 1035, 196 Ct.Cl. 263 (1971), which are equally applicable to the instant case and to which dissenting opinions I still adhere, but which will not be repeated for the sake of brevity.

1. I do concur that the failure of plaintiff, who had the help of counsel at the time, to ask the Board of Appeals and Review to order a hearing precludes him from raising that point in this court. Pine v. United States, 371 F.2d 466, 178 Ct.Cl. 146 (1967).

2. The court's opinion does not discuss our power to set aside, as unsupported by sub-

DAVIS, Judge (dissenting) :

I

The majority opinion refuses plaintiff all relief by weaving together four main strands of thought: (a) the lack of substantial evidence supporting the administrative findings that the failures to promote plaintiff in 1951 and 1956 were discriminatory, or to show that the denial of in-service training was discriminatory; (b) the failure of the administrative authorities to find any legal wrong committed against plaintiff, coupled with their discretionary election to limit relief to the restricted type they awarded; (c) in any event, the failure of plaintiff to show specifically enough that he would have been promoted, so as to disclose legal wrong warranting a remand; and (b) the impossibility of molding back-pay relief for the discriminatory failure to train. I do not agree with any of these grounds.[1]

*Substantial evidence:*[2] Both the Veterans Administration Employment Policy Specialist and that agency's Discrimination Complaints Officer found that Mr. Small had been discriminated against, in regard to promotion, in 1951 and 1956. They also found a discriminatory failure to give on-the-job training. In its letter to plaintiff, the Civil Service Commission's Board of Appeals and Review specifically stated: "The Veterans Administration \* \* \* found evidence to substantiate your charge that race was a factor in your failure to obtain on-the-job training to improve your skills, and in your non-selection for promotion."

Supporting this administrative determination as to non-promotion and failure to train there is substantial material

stantial evidence, administrative findings in personnel matters which are favorable to the claimant. *Cf.* Bridgman v. United States, 399 F.2d 186, 190, 185 Ct.Cl. 133, 139–140 (1968) ; S & E Contractors, Inc. v. United States, 406 U.S. 1, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972). I assume, for present purposes, that the court has that authority.

in the record, both in the general circumstances of plaintiff's long employment by VA and in the particular events at the time of the two failures to promote. In the first category there is evidence to this effect:—for over 15 years of federal employment prior to his complaint of discrimination (April 1968) from which this suit emerged, Mr. Small worked at very low-level positions; he was promoted only once from Laborer CPC–2 to Laborer WA–3 in 1957, although he often applied for promotion; he was never permitted, prior to his complaint of discrimination, to participate in an on-the-job training program, despite his several times seeking such admission; after the lodging of the complaint, he was quickly promoted to Laborer-Equipment Operator WA–4, then given on-the-job training for the first time,[3] and immediately credited with 480 hours of prior experience operating a tractor; in March 1970 (after the Civil Service Commission's decision) he was upgraded to Coal Unloader Operator WB–6; previously, even the VA had determined that he was qualified (in February 1963) to be a Plasterer WA–5 and, in August 1967, to be a Truck Driver WA–6 (though he was not given those positions); there is also evidence that he had been operating a tractor as far back as 1955 but that his job description did not (until after the complaint) reflect this important facet of his work and qualifications. *See* note 7, *infra.*

The administrative fact-finders were also entitled to look at Mr. Small's individual employment history in the light of the paramount fact that, until the past decade or so, black employees of the Federal Government were usually retained in low-level jobs, were not promoted or hired above those bottom grades, and were not often considered for upgrading. Acknowledgment of this cardinal (though general) proposition was the major foundation for the successive series of executive orders mentioned in Judge Nichols' opinion, for the development and evolution of the federal employees' anti-discrimination program, and for the recent inclusion in the Equal Employment Opportunity Act of 1972 of detailed statutory provisions respecting federal personnel. As the Supreme Court said, 50 years ago, in taking judicial notice of a comparable overriding fact: "All others can see and understand this. How can we properly shut our minds to it?" Bailey v. Drexel Furniture Co., 259 U.S. 20, 37, 42 S.Ct. 449, 450, 66 L.Ed. 817 (1922) (the "Child Labor Tax Case").

From all of this and other aspects of the case, the VA deciders could conclude, as they obviously did, that they should not credit the assertion of management that plaintiff was too handicapped by illiteracy, too poorly educated for advancement, too unmotivated, or too unqualified. They could also conclude from the general and long-continued denial of on-the-job training that, in the particular region of plaintiff's employment, there was a continuing bias against the training and consideration of Negro workers for advancement. Moreover, one would not have to be overly-sophisticated to infer that plaintiff's rather quick rise after he complained in the spring of 1968 was not due to some long dormant and newly emerging qualities, aptitudes, or characteristics, but that he had basically the same potentiality all along.

As for the particular circumstances of the two promotions, the administrative fact-finders could and did take into consideration the fact that on each occasion a white was selected and in 1956 he essentially came from outside the station (at that time plaintiff had five years of experience at the location). In 1961 another Caucasian from outside was cho-

---

3. The record contains evidence that only five other blacks were given on-the-job training, and of these five four (along with plaintiff) began their training in 1968 after complaints of discrimination had been filed.

sen for a job (Gardener WA–6) for which plaintiff had applied.[4]

I do not say that on the whole record the deciders were required to find that Mr. Small was discriminatorily denied promotion in 1951 and 1956, or discriminatorily deprived of on-the-job training, but I am persuaded that there was substantial support in the record as a whole —melding plaintiff's whole history with the specific situation in 1951 and 1956 —for the favorable determination that was made, and, accordingly, that it is error for us to set the administrative findings aside.

*The nature of the administrative decision*: The majority also seem to read the VA findings—contrary to the way the defendant, the VA itself, and the Civil Service Commission understood the agency decision—as deciding that (1) in any event no legal wrong was committed against plaintiff, and (2) that, as a matter of discretion, the relief administratively awarded was sufficient to remedy any previous bad practices by the VA. I consider both of these premises to be quite erroneous, and contrary to what the VA actually determined.

For the first of these conclusions, Judge Nichols' opinion relies primarily on Mr. Wells' finding that "there is no evidence of record to substantiate Mr. Small's contention that he was subjected to *personal* racial discrimination by the Center Director, the Assistant Director, the former Personnel Officer or by the former supervisory personnel whom he had accused of being discriminatory toward him" (emphasis added). This determination seems to me to refer only to plaintiff's charge (there were many allegations of discrimination) that he was personally discriminated against on his existing job with respect to leave, medical treatment, job assignments, etc. The finding does not appear to have been meant to have any bearing on discrimination in promotion or on-the-job training which Mr. Wells expressly found to exist. And Mr. Holland, the VA Discrimination Complaints Officer, explicitly determined: "On the basis of a review of the total record of the matters raised in Mr. Small's complaint, I find that there is evidence to substantiate his charge that race was a factor in his failure to obtain on-the-job training to improve his skills and non-selection for promotion." These were plainly findings of a legal wrong and of a violation of the Executive Order. As already indicated, the Civil Service Commission similarly understood the VA decision. Both agencies considered that there had been a violation of the President's directive.

Nor is there better backing for the view that the VA and the Civil Service Commission refused back-pay as a matter of discretion. It is clear to me that, until our *Chambers* and *Allison* decisions (Chambers v. United States, 451 F.2d 1045, 196 Ct.Cl. 186 (1971); Allison v. United States, 451 F.2d 1035, 196 Ct.Cl. 263 (1971)), the Commission and the executive branch took the position that, in these circumstances, back pay or other monetary relief could not legally be awarded by the Commission or the employing agency. The limitation of relief to Mr. Small, excluding all monetary compensation, was not an exercise of discretion, but submission to what was then deemed the mandate of the law.

*Specific injury*: Unless I misunderstand the majority view, another prime ground is that, whatever the administrators may have decided, the present record is insufficient to show specifically that plaintiff would have been promoted at a particular time if it were not for the discrimination, and that we should not, or cannot, remand to the Civil Service Commission for further evidence and findings on that subject.

---

4. The majority emphasizes the destruction of the promotion files relating to the 1951 and 1956 selections, but this seems to me comparatively unimportant in view of the investigator's sufficient reconstruction of the events from affidavits and inquiry, and the impact of plaintiff's general history on the job. It is not uncommon for triers to make determinations even though the original files are no longer available.

This, too, seems wrong to me. Certainly, the findings of discriminatory failure to promote in 1951 and 1956 (which we should accept) are, at the very least, indication of a specific deprivation. As for training, the long-continued failure to give training to black workers including Mr. Small (see note 3, supra), their quick integration into the program after they made complaint, and the insistence of management on proper training,[5] all combine to warrant further inquiry into the effects of that discrimination, i. e. whether plaintiff was pecuniarily injured by the deprivation and is entitled to pecuniary relief for the failure to train.

With much more general findings of discrimination, the majority of the court in Allison, supra, called for further proceedings before the Civil Service Commission. In this respect the present case is clearly a fortiori. On a remand under the Allison precedent,[6] the Commission could well find, for instance, that the non-promotion in the 1950's, together with the failure to train, so affected Mr. Small's employment status in the 1960's that he was still suffering from those failures to upgrade when he filed his complaint of discrimination. A fair measure of damages can also be constructed.[7] Those are the types of tasks which other tribunals, including the district courts, have been performing for some time, with respect to non-federal workers, under the civil rights and equal employment legislation, and the Commission can now do the same for this federal employee. There is no reason why plaintiff should not have the same opportunity as we gave to the plaintiffs a year ago in Allison.[8]

*Back pay for discriminatory failure to train*: In addition to incorrectly voiding the administrative finding of discrimination in failing to supply training and wrongly reading the administrative decision as a discretionary refusal to give a pecuniary remedy, the court seems to consider it impossible to adjudicate the monetary consequences of this denial in the form of a back-pay award. Without any factual basis or effort to see what can be done, the opinion appears to consider the inquiry too speculative to be undertaken. This slights the powers and the resourcefulness of the Civil Service Commission and cuts off at the threshold, before the attempt is even

5. An official "position report" in 1968 on Mr. Small's WA-4 job, to which he was promoted shortly after he filed his discrimination complaint, shows that "experience and training" was a substantial component of the WA-4 position.

6. Pub.L. No. 92-415, 86 Stat. 652 (enacted August 29, 1972), now gives this court "in any case within its jurisdiction" "the power to remand appropriate matters to any administrative or executive body or official with such directions as it may deem proper and just."

7. The 1968 "position report" on the WA-4 job (see note 5, supra) shows that tractor-driving was 25% of that position and was the only reason for the upgrading from WA-3 to WA-4; plaintiff had been driving a tractor since 1955, without getting adequate credit for it in grade or pay. A minimum measure of damages would be at least the difference between a WA-3 and a WA-4 from 1955 to 1968.

8. Plaintiff makes a detailed argument that 42 U.S.C. § 1981 (originally part of § 1 of the Civil Rights Act of 1866) supplies another basis—in addition to Allison and Chambers—for holding the Federal Government monetarily liable, but I do not, because I need not, reach that intricate point. This novel contention seems to me to call for detailed and careful consideration if it is to be passed upon. Cf. Sullivan v. Little Hunting Park, 396 U.S. 229, 237, 239, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969); Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed. 2d 1189 (1968); Hurd v. Hodge, 334 U.S. 24, 68 S.Ct. 847, 92 L.Ed. 1187 (1948); Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (C.A. 5, 1970), cert. denied, 401 U.S. 948, 91 S.Ct. 935, 28 L.Ed.2d 231 (1971); Mizell v. North Broward Hosp. Dist., 427 F.2d 468 (C.A. 5, 1970); Chambers v. United States, 451 F.2d 1045, 1050, 1052-1054, 196 Ct.Cl. 186, 194-195, 198-201 (1971); Eastport S. S. v. United States, 372 F.2d 1002, 1007-1008, 178 Ct.Cl. 599, 605-606 (1967); Ralston Steel Corp. v. United States, 340 F.2d 663, 668 n. 5, 169 Ct.Cl. 119, 126 n. 5, cert. denied, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965).

made, any consideration whether some sort of monetary remedy can properly be fashioned. I am not so omniscient that I can say categorically, at this initial stage, that it would necessarily be useless to have the matter threshed out at the Commission level. The thing to do is to allow the effort to be made before crying failure. The remedial aspects of equal employment opportunity litigation are still in their infancy, and I see no call to declare *a priori* that they cannot possibly grow and develop in this way or that. The Commission has full powers under the new Equal Employment Opportunity Act of 1972 and we do not yet know the forms in which that plenary authority can, will, and should be used.

## II

Judge Skelton's separate opinion would dismiss for lack of jurisdiction, citing the dissents in *Chambers* and *Allison*. On the point of jurisdiction, I continue to adhere to the opinions of the court in those two cases.

## III

The disposition of the case I would make is, first, to uphold our jurisdiction on the basis of the *Chambers* and *Allison* decisions; second, to sustain the administrative findings that plaintiff was discriminatorily treated; and, third, following *Allison*, to deny without prejudice both plaintiff's and defendant's motions for summary judgment and remand to the Civil Service Commission to allow plaintiff to apply for further relief by way of back-pay or comparable monetary recompense, with the Commission to take into account the factors mentioned at the close of the *Allison* opinion and any other appropriate elements. On remand, the Commission can exercise its preexisting powers, as well as its newly-granted authority under the Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, 86 Stat. 103,

section 11 (amending Title VII of the Civil Rights Act of 1964), to employ "appropriate remedies, including reinstatement or hiring of employees with or without back pay * * * ." 86 Stat. 111. The Commission can thus grant the full relief to which the plaintiff is entitled, including back pay, if appropriate, for the discriminatory failures to promote, and whatever monetary compensation is due, if any, for the discriminatory failure to train. We should remand to permit that tribunal to make those determinations.[9]

KASHIWA and KUNZIG, Judges, join in the foregoing dissenting opinion.

---

9. Plaintiff does not desire further proceedings before the Commission, apparently preferring court proceedings, but *Allison* makes it clear that, under our precedents,

this court cannot perform the functions which remain, or make the specific determinations which have to be made.