George D. PETTIT

v.

The UNITED STATES.

No. 253–72.

United States Court of Claims.

Dec. 19, 1973.

Alvin Dwight Pettit, Washington, D. C., atty. of record, for plaintiff.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Acting Asst. Atty. Gen. Irving Jaffe, for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge:

Plaintiff is a black who is employed at the Aberdeen Proving Grounds at Aberdeen, Maryland, and is a classified Federal Civil Service employee, Engineer Human Factors in the Human Engineering Laboratory (HEL), Aberdeen Proving Grounds. He brings suit to recover for his losses resulting from the Government's failure to promote him because of racial discrimination practiced by its employees.

Plaintiff's case is distinguished from racial discrimination cases previously heard by this court in that he seeks to recover not only back pay, but also either compensation for future losses or to be promoted to that position he would have attained, but for "racial discrimination". Jurisdiction is asserted under 28 U.S.C. § 1491, which provides as follows:

> The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, * * * To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. * * * (Supp. II, 1972).

This plaintiff relies on Executive Order No. 10722, 3 C.F.R. 1954–1958 Comp., p. 384 (1957); Executive Order No. 10925, 3 C.F.R. 1959–1963 Comp., p. 448 (1961); Executive Order 11114, 3 C.F.R. 1959–1963 Comp., p. 774 (1963); Executive Order 11162, 3 C.F.R. 1964–1965 Comp., p. 215 (1964); Executive Order 11246, 3 C.F.R. 1964–1965 Comp., p. 339 (1965), now Executive Order 11478, 3 C.F.R. 1966–1970 Comp., p. 803 (1969); and the Regulations of the Civil Service Commission, 5 C.F.R. §§ 4.2 and 713.202. These provisions explicitly require all Government agencies to offer their employees equal opportunities in all respects without regard to race.

The present controversy originated in April 1967. Plaintiff as an Electronic Engineer, GS–11, Step 7, filed a com-

plaint alleging that he was denied promotion to GS–12 solely because of his race. The complaint was investigated by Earl R. Haag, Deputy Equal Employment Opportunity Officer. Mr. Haag, in his Summary of Investigation concluded that Mr. Pettit's complaint was baseless.

Plaintiff requested a formal hearing. The Hearing Officer, William J. Bivens, concluded in his voluminous Statement of Findings of Fact and Recommendations that "Mr. Pettit's failure to be promoted from GS–11 to GS–12, was not the result of racial discrimination, but rather because Mr. Pettit did not merit a promotion." However, he went on to note that Mr. Pettit was denied equal employment opportunity in the following particulars:

\* \* \* \* \* \*

b. The display of Confederate flags in Mr. Pettit's work area had the effect of saying to him and fellow employees that he was not accepted as an engineer on the same basis and with the same professional status as white engineers. The incident at the Ballistic Research Laboratory when Mr. Pettit was attempting to make a point in a panel discussion during a television program and Mr. McCain used his lighter which played Dixie and the people laughed had the effect of including Mr. Pettit as the object of their laughter as he was the only Negro present and as he was attempting to speak at the time. This was a rude and demoralizing act which was embarrassing to Mr. Pettit, a Negro engineer, in the presence of his white colleagues, \* \* \*

c. References to Mr. Pettit and Mr. Gentry or statements to them as "boys" did not accord them the same professional recognition as given to white professionals, \* \* \*

d. Failure to provide Mr. Pettit the same facilities and treatment respecting desk telephone instruments and position of name on routing slip as provided to white professionals was a denial of equal professional status and as such a denial of equal employment opportunity, \* \* \*

Also he found instances where other black employees at HEL were denied equal employment opportunity, specifically with respect to promotions.

Plaintiff's complaint apparently had been triggered by the decision of a Mr. Erickson, a supervisor, in January 1967, to recommend the promotion of plaintiff's white fellow workers Kurtz, Emery and Randall. The first two were shortly thereafter promoted from GS–11 to GS–12 in competitive personnel actions. Randall's promotion is less relevant as it was only from GS–9 to GS–11, plaintiff's grade, so he could not have considered himself in contention for it. By the competitive system, the personnel officer prepared a slate of names of persons shown by computerized data to be well qualified. The supervisor chose a name from this slate. Employees did not know whether their names were on the slate, nor the reasons therefor. The system was found by Mr. Bivens to induce poor morale in anyone passed over as he could not know how or why. This was the competitive promotion system. The plaintiff here also complained and still complains that three lateral transfers by which he was moved from one organizational subdivision to another, in 1964, 1966 and 1968, were motivated by a desire to remove him from competition for anticipated competitive promotions. The record makes it doubtful whether a lateral transfer would have that effect.

On October 31, 1969, Hearing Officer Bivens retired from Government service. Thereafter John H. Vogel was appointed as Successor Hearing Officer in order to evaluate the prior hearing Officer's Findings of Fact and Recommendations in light of plaintiff's rebuttal testimony. Mr. Vogel in his Supplementary Statement of Findings of Fact and Recommendations as the Successor Hearing Officer, concurred in his predecessor's Findings of Fact and Recommendations.

The Findings of Fact and Recommendations of the Hearing Officer and the

Successor Hearing Officer were modified by Headquarters, United States Army Materiel Command (AMC), and a copy of said modifications was sent to plaintiff with a letter dated June 23, 1970, signed by Major General Leo B. Jones, Chief of Staff. The relevant portions of the Modification of the Findings of Fact and Recommendations of the Hearing Officer and the Successor Hearing Officer in the Equal Opportunity Complaint of Mr. George D. Pettit, concluded as follows:

\* \* \* \* \* \*

2. The evidence disclosed that there were three Negro employees at HEL who left the employment of the Labs due, in part, to evidence of the *absence of further promotion opportunity at this activity.* There is further evidence that Mr. Pettit *would not take the same course of action* that the other Negro employees took to alter their situation, i. e., take employment elsewhere. Mr. Pettit was an activist in working to integrate the schools in Harford County, he stayed and fought for equality and his constitutional rights rather than accept the status quo or move to an area where his rights would have been provided for him without conflict. Whether he should have stayed and pursued his efforts to break the patterns of exclusion is not relevant to this case, *the results of his efforts are.*

\* \* \* \* \* \*

4. a. Evidence of racism runs through the substance of testimony relating to the treatment of black employees under the direct or indirect supervision of Dr. John Weisz. Dr. Weisz appeared to be oblivious to the needs of his minority group employees and impervious to the acts of discrimination practiced by subordinate supervisors such as Erickson, McCain, Randall and Cruse. \* \* \*

b. Hearing testimony and evidence disclosed still *another* case in which a *Negro employee was deprived of equal opportunity for promotion.* \* \* \*

c. The finding of the Hearing Officer that "Negro professionals previously employed at HEL left to seek and obtain employment elsewhere because *equal employment opportunity for advancement was not accorded them at HEL"* is borne out by the evidence. (Statement of Findings of Fact and Recommendations, 300) That appropriate action needs to be taken to reverse this situation is evident. *There can be no separation of the actions of HEL in failing to promote Negroes, who subsequently took other employment where their talents were recognized, and the instant case of the black employee who stayed and attempted to change the system.*

d. The evaluation of Mr. Pettit's performance in assigned work projects showed that of eleven assigned projects he performed at a level above average or excellent in three; average in two, marginally satisfactory in four and unsatisfactory in two. Consideration must be given to the environment in which this performance occurred. If we accept the conclusion that discrimination was practiced by Pettit's supervisors, then we must recognize that a harmonious, cooperative relationship could not exist between the complainant and his colleagues. His performance would have to be weighted in some manner in order to overcome the adverse conditions of his work environment. (All above emphasis supplied by plaintiff.)

\* \* \* \* \* \*

The Recommendations of the Army read as follows:

In view of the discriminatory actions to which Mr. Pettit has been subjected by his supervisors, he should be given preferential consideration for promotion to the next GS–12 vacancy within Human Engineering Laboratories provided he is among the best qualified candidates referred. Further, in order to preclude any future display of discriminatory actions, the supervisors who were found to have engaged in such practices

against Negro employees should be disciplined and any promotion actions in which they would be the selecting official pre-audited by AMCDL for compliance with required technical competence requirements for referred applicants.

While these Findings are not without ambiguity, we read them as rejecting the holdings of the Hearing Officers that plaintiff's non-promotion was due to lack of qualification. They substitute, instead, the notion that somewhere along the line, or more than once, a personnel action or actions were taken, that passed the plaintiff over for promotion because of his race and not on the merits. Here, as in other of these cases, we confront reports which omit the specific we would need for a back pay award for the reasons, among others, that the writers were not aware that back pay could be awarded or that we would desire details of personnel actions.

The plaintiff accepted the *Modifications of the Findings of Fact*, but appealed the recommended actions to AMC. In his letter of appeal Pettit requested: 1) an immediate promotion to GS–12, 2) effective date of such promotion retroactive to 1960, 3) immediate opportunity to compete for a GS–13 position, 4) restitution for expenses of hearing to include attorneys' fees, and 5) a cease and desist order against the management of the laboratories. Said appeal was denied by a letter from Albert Kransdorf, Director of the Employment Policy and Grievance Review Staff of AMC, dated September 22, 1970, and received by Pettit on October 2, 1970. The letter deemed Mr. Pettit's request that he be promoted to GS–12 satisfied by his promotion to that level which was effective as of August 10, 1970. However, the letter went on to say the plaintiff's request for retroactive promotion was barred by decisions of the Comptroller General and that there was no provision made under the Federal Equal Opportunity Program to reimburse complainants for expenses incurred by them in pursuing their claims. It also advised Pettit

of his right to appeal to the Board of Appeals and Review (BAR), United States Civil Service Commission, "no later than 15 days from the date you receive this decision."

Mr. Pettit says he did not want to appeal before determining what management was going to do to implement the Army's directive and that he was advised to await such information by Aberdeen EEOO. The fifteenth calendar day fell on Saturday, October 17, 1970, Mr. Pettit could not appeal on that or the following day since the office was closed for the weekend. On Monday, October 19, 1973, Pettit called to determine if it was too late to file an appeal, pointing out that his telephone call could be considered an appeal. He was told to send a letter explaining his reasons for delay and an affidavit from the Aberdeen EEOO to corroborate Pettit's allegation that they suggested that he delay making an appeal. Mr. Pettit reduced his appeal to writing in a letter dated October 20, 1970, and received by BAR on October 22, 1970. Mr. Pettit further explained his delay in filing an appeal in the letter as follows:

The promotional plan offered by Mr. Stephens was received by me at closing time, 17 Oct. 70. It is my judgment that the lateness of my receiving details of management's plans were part of their design and was an attempt, on their part, to lull me into inactivity, thereby causing me to forfeit my right of appeal. * * *

The plaintiff's appeal was denied by BAR on January 20, 1971, on the grounds of its lack of timeliness and a Comptroller General decision denying the Commission authority to make retroactive promotions.

On October 15, 1971, the Court of Claims decided Madrith Bennett Chambers v. United States, 451 F.2d 1045, 196 Ct.Cl. 186, and Melvin Allison v. United States, 451 F.2d 1035, 196 Ct.Cl. 263 (1971). These cases support the proposition that the Court of Claims will grant a plaintiff back pay where he can show he would have been promoted at a

specific time if it were not for discrimination. Based on these decisions the plaintiff petitioned the Civil Service Commission, the General Accounting Office, Department of the Army, and Army Materiel Command for reconsideration. Plaintiff requested those Agencies and Departments to award him back pay and compensation for losses to be incurred in the future as the result of past discrimination, based on his computations. All Agencies denied their authority to do either until authorized by GAO and therefore accepted his appeal as filed before them, but deferred to the decision making power of the GAO.

GAO advised plaintiff's counsel on June 5, 1972, that it would not follow the decisions of this court, but would again deny the Government's power to pay on a retroactive claim arising out of discrimination. Plaintiff considered such denial that of the petitioned Agencies and Departments since they apparently vested their decision making power in GAO, and therefore he petitioned this court for relief on June 19, 1972.

■■ While the GAO has no power to review the decisions of this court, United States v. Jones, 119 U.S. 477, 7 S.Ct. 283, 30 L.Ed. 440 (1886), its decisions respecting money claims are binding on the Executive branch of the Government, 31 U.S.C. §§ 44, 71, 74. It is, therefore futile to press before Executive Agencies a claim the Comptroller General has rejected, whether rightly or wrongly. The Government argues however that this court has no 28 U.S.C. § 1491 jurisdiction of cases for back pay and other relief under the "Civil Rights" Executive Orders. This contention does not merit further discussion since it has been previously rejected by this court in *Chambers* and *Allison, supra.* Defendant admits that plaintiff has no right to sue under the Equal Employment Opportunity Act of 1972, Pub. L. 92–261, which confers jurisdiction for the future on the District Courts. A suit here by a plaintiff having access to the District Court would raise a different question, with which we do not deal.

■■ The Government's defense of failure to exhaust administrative remedies is also without merit. BAR was in error in dismissing plaintiff's appeal as untimely. This is true even if the 15 day period for appealing AMC's decision is measured by "calendar days" rather than "working days" as contended by the defendant. Plaintiff had only 14 calendar days to appeal since the fifteenth day fell on a Saturday during which no one was present at BAR to receive the appeal. Both the Federal Rules of Civil Procedure and the Rules of the court take into consideration the fact that most Government offices are closed on Saturdays, Sundays and Holidays by extending a deadline that falls on such a day to the next working day. Fed.R. Civ.P. 6(a), Ct.Cl. R. 25(a). Pettit's telephone call on Monday, October 19, possibly was sufficient to constitute a timely appeal since he was not told flatly that the notice of appeal would have to be in writing, and the call was followed up in writing shortly afterwards. The sufficiency of a notice of administrative appeal should be liberally construed as long as an adverse party is not prejudiced thereby. *See,* Gernand v. United States, 412 F.2d 1190, 188 Ct.Cl. 544 (1969), where this court held that a letter to President Kennedy was sufficient to constitute notice of appeal to the Civil Service Commission. Moreover, the futility of pressing before an Executive Agency a money claim the GAO has rejected, must be obvious to all, and in *Allison, supra,* we viewed it as excusing the plaintiffs from running out their string with the BAR, to achieve a sufficient exhaustion of administrative remedies to satisfy the doctrine involved.

■ We reaffirm our prior cases holding that Government employees are entitled to back pay where they can show that but for specific instances of racial discrimination, favorable personnel action would have been taken.

Chambers v. United States, *supra*; Allison v. United States, *supra;* Small v. United States, 470 F.2d 1020, 200 Ct.Cl. 11 (1972).

In *Chambers,* the court had before it a unique record. It was conceded by the Government that plaintiff, an otherwise qualified black woman, would have been appointed to a clerk typist Government position, if it were not for racial discrimination. The administrative record in this case comes close to such an admission but does not make it explicitly. Administrative Findings were made by the local EEO officer, two Hearing Officers, and the Headquarters AMC, in that temporal sequence. The EEO officer found no merit at all to plaintiff's allegations, but the two Hearing Officers both found numerous instances of racial discrimination, although they determined that such practices had not resulted in denial of promotions. Headquarters, AMC, was critical of the Hearing Officer's conclusions and issued its own "Modifications", which come close to admitting that plaintiff was denied promotion for racial reasons. After noting that other black professionals had left the same laboratory because of lack of equal advancement opportunity, the AMC found that "there can be no separation of the actions of HEL in failing to promote Negroes, who subsequently took other employment where their talents were recognized, and the instant case of the black employee who stayed and attempted to change the system." This language cannot be read as fully meeting the "but for" test as plaintiff contends. The specific Findings, necessary for relief, which were requested on remand in *Allison, supra,* are absent here. AMC did not say that Pettit was denied relief solely because of his race *in haec verba* although it strongly implies that such was the case. It did not go on to determine whether Pettit was qualified for promotion at some earlier time, whether earlier vacancies existed at Aberdeen which Pettit could have filled, or whether there were funds available to pay Pettit at a higher

grade. However, we are mindful of the fact that the Findings were made prior to the *Chambers* and *Allison* decisions. At that time there was no reason for AMC to cast its Findings in the pattern required by those decisions.

The record in this case is significantly different in its showing of discrimination from that in *Small, supra,* where we held that back pay could not be awarded since all possible officials were exonerated from "personal" wrongdoing and "personal" wrong was not done. The very presence of discrimination, which defendant denied in *Small* is conceded in this case. The alleged specific personnel actions that discriminated against *Small* took place long before the complaint, and the records relating to them had been destroyed in the normal course of records disposal. The court thought that it appeared impossible for any fact finder to make an informed or reasoned determination whether such actions were discriminatory or not. Here, however, the discriminatory personnel actions Pettit alleges were recent, some of them at least, and susceptible of careful investigation which actually took place. The initial Finding that Pettit's non-promotion was due to his lack of qualification was emphatically rejected by higher authority, in words implying a belief the real cause was discrimination, by identifiable and identified officials. Thus the gaps deemed fatal to Small's case are filled here. But we lack a specific Finding of the grade and pay of the position Pettit would have filled, but for discrimination, and the date of the personnel action by which he would have filled it. The procedure used in making competitive promotions requires the exercise of discretion, and such exercise is not for us, at least not in adjudicating back pay claims.

 In sum, although Mr. Pettit avoids the short shrift given the plaintiff in *Small* he does not come to this court with administrative Findings that meet the requirements necessary for relief as laid out in *Chambers* and *Allison.* Therefore we remand to the Civil Service Com-

mission under the authority given to us by Congress in 28 U.S.C. § 1491, as amended by Pub.L. 92–415 (August 29, 1972) to hear evidence and making Findings on the missing elements enumerated above.

Equal Employment Opportunity cases present this court with the difficult task of maintaining the delicate balance between two considerations which are difficult to reconcile. We do not intend to pay mere lip service to a legal right by saddling plaintiffs with a burden of proof so high as to preclude a remedy in most of the typical cases of this sort. On the other hand, that a plaintiff is black does not mean he is excused from the clear-cut showing of legal wrong required of other claimants, or that we are desirous of usurping the discretionary decisions of the Executive branch as to the opening of vacancies, the availability of funds, or the relative qualifications of different applicants for competitive promotion.

The Supreme Court resolved this dilemma in a recent case where plaintiff claimed defendant failed to rehire him because of racial discrimination. This was done by shifting the burden of proof to the defendant once plaintiff established a prima facie case. The case, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), contains relevant language as follows:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.[13] * * * (Footnote Omitted.)

The burden them must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. * * *

Footnote 13 in the quotation above notes that "prima facie proof required from the complainant is not necessarily applicable in every respect to differing factual situations" which will necessarily occur under Title VII. This is also true of cases brought under the "Civil Rights" Executive Orders such as we have here. We, therefore, hold that a prima facie case of failure to promote because of racial discrimination is made by showing: (i) that plaintiff belongs to a racial minority, (ii) that he was qualified for promotion and might have reasonably expected selection for promotion under the defendant's on-going competitive promotion system, (iii) that he was not promoted, and (iv) the supervisory level employees having responsibility to exercise judgment under the promotion system betrayed in other matters a predisposition towards discrimination against members of the involved minority. These matters are all established in the Findings herein. The burden may be deemed shifted to defendant to show, as to each passing over of plaintiff, where he might have been selected, that the non-selection was for legitimate, non-discriminatory reasons. See, Taylor v. Safeway Stores, Inc., Dist.Ct.Colo., No. C 3051, 365 F.Supp. 468, decided September 18, 1973, where a similar approach was taken in a Title VII case involving the discharge of an employee because of alleged racial discrimination.

Plaintiff's contention that he is entitled to recover back pay without consideration of the merits because allegedly the Army failed to comply with the applicable procedural regulations is not supported by the authorities cited. Even if we accept as true plaintiff's allegation that he was divested of procedural rights, the cases which he cites apply only to adverse personnel actions such as discharge or demotion rather than a failure to promote as we have here. Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957)

(discharge); Vitarelli v. Seaton, 359 U. S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959) (discharge); Greene v. United States, 376 U.S. 149, 84 S.Ct. 615, 11 L. Ed.2d 576 (1964) (loss of security clearance); Chisholm v. United States, 149 Ct.Cl. 8 (1960) (discharge); Garrott v. United States, 340 F.2d 615, 169 Ct.Cl. 186 (1965) (termination of retirement annuities).

We, therefore, deny both cross motions for summary judgment and remand to the Civil Service Commission, pursuant to Pub.L. 92–415, 28 U.S.C. § 1491, for further proceedings consistent with this opinion. The Civil Service Commission can seek guidance from the Equal Employment Opportunity Act of 1972, Pub.L. 92–261, which expressly confers on the Commission power to grant back pay in cases such as this. In accordance with this Court's General Order No. 3 of 1972, plaintiff's attorney of record shall advise this court, by letter to the clerk, of the status of the remand proceedings. Such advice shall be given at intervals of 90 days or less, commencing from the date of this opinion.

COWEN, Chief Judge (dissenting):

None of the parties in the *Allison* and *Chambers* cases called the court's attention to Section 701 of the Civil Rights Act of 1964 (78 Stat. 253). It was not mentioned or alluded to in the oral arguments, in the briefs, or otherwise. However, on September 23, 1973, about three weeks before our decisions in *Allison* and *Chambers*, the Sixth Circuit issued its decision in Ogletree v. McNamara, 449 F.2d 93 (6th Cir. 1971). The decision was not published or otherwise brought to our attention before the decisions in *Allison* and *Chambers* were announced.

In that case plaintiffs, who were Negro employees of Wright Patterson Air Force Base, sued Secretary McNamara, seeking several forms of relief because of alleged racially discriminatory practices by the Air Force. The Sixth Circuit affirmed a decision of the District Court, which held that the action was basically one against the United States and that the United States had not consented to be sued in such cases.

The Sixth Circuit's decision was based upon Section 701 of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e(b) (1970), which expressly excludes the United States from the definition of an employer against whom suit may be maintained to enjoin an employer from engaging in racially discriminatory employment practices, or to recover back pay, or to seek reinstatement to a position from which the employee has been discharged. These remedies are provided for in Section 706(g) of the Civil Rights Act of 1964, 42 U.S. C. § 2000e–5(g).

While the various Executive orders relied upon by plaintiffs in *Allison* and *Chambers* and by plaintiff in this case provide for certain administrative remedies, the *Ogletree* case makes it quite clear to me that Congress expressly withheld consent to suits against the Government by Government employees who seek back pay or other remedies based on racially discriminatory practices by Government agencies. *Ogletree* cannot be distinguished on the ground that the plaintiffs there sought an injunction against the Government because, as pointed out above, both injunctions and suits for back pay are included among the judicial remedies employees may pursue against private employers under the provisions of Section 706(g) of the Civil Rights Act of 1964, 42 U.S. C. § 2000e–5(g). However, these judicial remedies were not available to employees of the Government until the enactment of the Equal Opportunity Act of 1972, 86 Stat. 103, which has no application to plaintiff's case.

It is axiomatic that this court has no jurisdiction of a suit against the United States based upon a regulation of an executive department if the regulation is in conflict with a law enacted by Congress. That is the situation here. In fact, in Ogletree v. McNamara, the plaintiffs relied upon

Executive Order 11,246, as modified by Executive Order 11,478. The court also took into account the Equal Opportunity Regulations issued by the Civil Service Commission, 5 C.F.R. § 713, upon which the plaintiff in this case relies.

In view of the foregoing, I find it unnecessary to discuss any other question raised in this case. The long and short of it is that we did not have jurisdiction of the suits brought in the *Chambers* and *Allison* cases, and we do not have jurisdiction of plaintiff's action.

SKELTON, Judge (dissenting):

I agree with the able dissenting opinions of Chief Judge Cowen and Judge Bennett. However, I would like to add the following:

This court does not have jurisdiction of this case. The decision of the majority is contrary to law and should not be allowed to stand. All of this is conclusively shown by the following authorities:

1. The decision of the majority is in direct conflict with the decisions of three circuit courts of appeals which hold that Executive orders do not authorize a suit by an employee of the United States against the Government if they are violated, and do not confer jurisdiction on the courts to entertain such suits. *See* Manhattan-Bronx Postal Union v. Gronouski, 121 U.S.App.D.C. 321, 350 F.2d 451 (1965), cert. denied, 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469 (1966); Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969), cert. denied, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970), and Ogletree v. McNamara, 449 F.2d 93 (6th Cir. 1971). *See also* Congress of Racial Equality v. Commissioner, Social Sec. Admin., 270 F.Supp. 537 (D.Md.1967). At oral argument, plaintiff's counsel stated that plaintiff's suit was based exclusively on the Executive orders described in his petition.

2. The majority opinion is in direct conflict with the decisions of the district court and the Sixth Circuit Court of Appeals in the case of Ogletree v. Mc-

Namara, *supra*. The Negro plaintiffs in that case brought a suit under Executive Order 11246, which is the same Executive order that is involved in the instant case, and the Air Force and Civil Service Regulations adopted pursuant to such order, alleging racial discrimination against Negroes in promotion practices. These are the same claims being made in our case. The district court in that case granted the Government's motion for summary judgment saying:

' * * * The requested relief is relief with respect to which the United States has not consented to be sued.' [449 F.2d at 96.]

The Sixth Circuit Court of Appeals affirmed the district court's decision holding:

The District Judge's rationale for entering summary judgment was that basically the action was against the United States in its sovereign capacity and that the United States had not consented to be sued and was immune to the suit. He relied primarily upon Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969), cert. denied, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970), and Congress of Racial Equality v. Commissioner, Social Security Administration, 270 F.Supp. 537 (D.C.Md.1967).

\* \* \* \* \* \*

\* \* \* [W]e believe the District Judge was correct in terming this suit an action against the United States in its sovereign capacity as to which it has not consented to be sued. *See* Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969), cert. denied, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970). [449 F.2d at 95–96, 99.]

It is clear that the court in *Ogletree* decided the very issue before us in the instant case. The majority opinion conflicts with that decision.

3. The majority opinion is in direct conflict with a long line of decisions of the Supreme Court and circuit courts of appeals holding that only Congress can give consent for the United States to be

sued, and it must be done by legislation that specifically waives immunity from suit; and that such consent to be sued must be specific and cannot be implied; and that such legislation must specify which court or courts have jurisdiction of such suits. None of this has been done in this case. *See* United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940); United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940); United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941), and Luckenbach S.S. Co. v. United States, 272 U.S. 533, 536, 47 S.Ct. 186, 71 L.Ed. 394 (1926).

4. The majority opinion is in direct conflict with at least four decisions of the Supreme Court that no officer of the Government can by his action waive the sovereign immunity of the Government from suit nor give its consent to be sued. This, of course, includes the President and all Executive Agencies. *See* United States v. Shaw, *supra*; United States v. United States Fidelity & Guaranty Co., *supra*; Munro v. United States, 303 U.S. 36, 58 S.Ct. 421, 82 L.Ed. 633 (1938); Finn v. United States, 123 U.S. 227, 233, 8 S.Ct. 82, 31 L.Ed. 128 (1887). *See also*, Jones v. Tower Production Co., 120 F.2d 779, 782 (10th Cir. 1941).

5. The majority opinion is in direct conflict with a long line of decisions of the Supreme Court and of this court that hold unequivocally that the appointment and promotion of a Government employee is an administrative function which must be exercised in the discretion of the head of the agency involved, and the courts have neither the authority nor the power to exercise such discretionary functions. We have held many times that this court is not in the promotion business and cannot promote any Government employee. *See* Decatur v. Paulding, 39 U.S. (14 Pet.) 497, 10 L.Ed. 559 (1840); United States v. McLean, 95 U.S. 750, 24 L.Ed. 579 (1877); Keim v. United States, 177 U.S. 290, 20 S.Ct. 574, 44 L.Ed. 774 (1900); United

States ex rel. Dunlap v. Black, 128 U.S. 40, 9 S.Ct. 12, 32 L.Ed. 354 (1888); United States ex rel. Boynton v. Blaine, 139 U.S. 306, 11 S.Ct. 307, 35 L.Ed. 183 (1891); Donnelly v. United States, 134 F.Supp. 635, 133 Ct.Cl. 120 (1955), and Tierney v. United States, 168 Ct.Cl. 77 (1964); and Article 2, Section 2, U.S. Constitution.

6. The majority opinion is in direct conflict with many decisions of this court and of the Supreme Court that hold that a Government employee is entitled only to the salary of the position or grade to which he has been appointed. The plaintiff had not been appointed to the positions or grades during the periods involved on which he claims salary in this case. *See* United States v. McLean, *supra*, Borak v. United States, 78 F.Supp. 123, 110 Ct.Cl. 236, cert. denied, 335 U.S. 821, 69 S.Ct. 43, 93 L.Ed. 375 (1948); Price v. United States, 80 F. Supp. 542, 543, 112 Ct.Cl. 198, 200 (1948); Ganse v. United States, 376 F. 2d 900, 902, 180 Ct.Cl. 183, 186 (1967); Dvorkin v. United States, 101 Ct.Cl. 296, cert. denied, 323 U.S. 730, 65 S.Ct. 66, 89 L.Ed. 586 (1944); Donnelly v. United States, *supra*, and Tierney v. United States, *supra*.

7. The majority opinion is in direct conflict with United States v. King, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), in which case the Supreme Court held that the Court of Claims has no power nor authority to grant equitable relief and cannot render a declaratory judgment, and its jurisdiction is limited to cases where the plaintiff sues for money actually and presently due him from the United States. In the present case the plaintiff is not suing for money actually and presently due him because he was not appointed to the positions and grades for which he claims salaries for the indicated periods. The majority opinion is in the nature of a declaratory judgment declaring the rights of the plaintiff, which the *King* case holds this court cannot issue. The *King* case forecloses any jurisdiction of this case by this court. The remand statute

(Pub.L. 92–415, 86 Stat. 652 (1972)) on which the majority relies, is of no help to its decision, because by the terms of the statute, such a remand can only be made in a case within the jurisdiction of the court and that is not the case here.

8. The majority opinion is in direct conflict with the regulations of the Civil Service Commission and Board of Appeals and Review (BAR) applicable to this case which are set forth in 5 C.F.R. § 713.233 that have the force and effect of law, which provide that an employee may appeal to the Board of Appeals and Review from the action of an agency, but not more than 15 *calendar* days after receipt of notice of the action. In this case, the plaintiff received notice of the adverse action of the agency on October 2, 1970. He telephoned the Board of Appeals and Review on October 19 and acknowledged that the 15-day period during which he could appeal, as stated in the notice, had expired on October 17, but that he still wished to appeal. Even accepting the majority opinion's view that he could file an appeal as late as Monday, October 19, because of the preceding Saturday and Sunday, the plaintiff still did not file a timely appeal as is forcefully pointed out in Judge Bennett's dissenting opinion. The majority says that the telephone call the plaintiff made on October 19 was sufficient as an appeal because he was not told by the defendant that he had to file a written appeal. As Judge Bennett points out, this is contrary to the record. The defendant's decision letter of September 22, 1970, told the plaintiff that if he wished to appeal he could submit his *letter of appeal* to the Board of Appeals and Review within 15 days from the receipt of the decision letter with a *copy of said letter* to the EEO officer at Aberdeen. This clearly advised the plaintiff that he had to file his appeal in writing. Thereafter, the plaintiff wrote a letter dated October 20, which was already one day late even under the majority view, but he did not file it with the BAR until October 22, which was three days late. Even if it can be assumed, as the majority does, that he could file his appeal as late as October 19, the telephone call simply did not meet the requirements of the regulation. In International Tel. & Tel. v. United States, 453 F.2d 1283, 197 Ct.Cl. 11 (1972), we held that a notice by telephone to renew a Government contract for the benefit of the Government was insufficient when the notice was required to be in writing. The rule against the Government in that case should be applied in favor of the Government in this case because the telephone notice was insufficient in both cases. The above regulation authorizes a waiver by the Board of Appeals and Review in its discretion of the time limit for the appeal if the employee can show he was not notified of the prescribed time limit and was not otherwise aware of it, or that circumstances beyond his control prevented him from filing an appeal within the prescribed time limit. The plaintiff did not even try to come within these exceptions. The Board rejected his appeal as untimely. He did not ask the Board to waive the time limit and did not and does not at the present time contend that the Board abused its discretion by not extending the time limit for his appeal.

Plaintiff says it would have been futile for him to appeal. Such a contention goes counter to the well-established rule that is presumed that officers of the Government will discharge their duties in a legal and proper manner. *See* United States v. Chemical Foundation, Inc., 272 U.S. 1, 14, 47 S.Ct. 1, 71 L.Ed. 131 (1926); United States ex rel. Harris v. Ragen, 177 F.2d 303, 305 (7th Cir. 1949); Holman v. United States, 383 F.2d 411, 416, 181 Ct.Cl. 1, 9 (1967); Kozak v. United States, 458 F.2d 39, 40, 198 Ct.Cl. 31, 35 (1972). We have held that to overcome this presumption "well-nigh irrefragable proof is required." Knotts v. United States, 121 F.Supp. 630, 631, 128 Ct.Cl. 489, 492 (1954).

How could the plaintiff or this court know an appeal would have been futile?

If the plaintiff can get by with this kind of argument, every employee who fails to timely appeal could say the same thing. Cases of this kind cannot be decided according to the subjective opinions of the employee. Such a system would render the regulations meaningless. It is plain that he did not comply with the regulations or the notice that he received, and thus failed to exhaust his administrative remedies. Plaintiff's argument that it would have been futile to appeal to the Board of Review and Appeals within the required 15 calendar day period is clearly an afterthought idea that was obviously conceived after the decisions in Chambers v. United States, 451 F.2d 1045, 196 Ct.Cl. 186 (1971), and Allison v. United States, 451 F.2d 1035, 196 Ct.Cl. 263 (1971), were handed down on October 15, 1971, a year after the time for his appeal had expired. This is shown by the fact that he did actually file an appeal with the BAR on October 22, 1970, five days late, and pressed it to a decision. Why did he file such an appeal if he thought it was futile to do so? This argument does not hold water. Plaintiff obviously did not think the appeal was futile, otherwise he would not have filed it. It is surprising that the majority falls for this argument by plaintiff.

The majority opinion indicates that "it is futile to press before Executive Agencies a claim the Comptroller General has rejected." The majority misreads the record, because it shows that the plaintiff never presented his claim to the General Accounting Office until November 3, 1971, which was over a year after the time for his timely appeal to the BAR had expired, and which was shortly after the *Chambers* and *Allison* cases were decided. His claim was not rejected by the GAO until June 22, 1972. So, it is crystal clear that the rejection of his claim by the GAO on June 22, 1972, could not have indicated to plaintiff prior to October 17, 1970, the last day for his timely appeal to the BAR, that such an appeal was futile. The majority errs in so holding.

9. The majority opinion is in direct conflict with the decisions of the Supreme Court and of this and other courts that if an employee does not appeal from an adverse personnel ruling within the time fixed by law, he has not exhausted his administrative remedies and cannot recover. Adler v. United States, 146 F.Supp. 956, 134 Ct.Cl. 200 (1956), cert. denied, 352 U.S. 894, 77 S.Ct. 131, 1 L.Ed.2d 87; McDougall v. United States, 149 F.Supp. 651, 138 Ct.Cl. 90 (1957); Henry v. United States, 153 F.Supp. 285, 139 Ct.Cl. 362 (1957); Monday v. United States, 146 Ct.Cl. 6 (1959), cert. denied, 361 U.S. 965, 80 S.Ct. 594, 4 L.Ed.2d 545 (1960), and Gernand v. United States, 174 Ct.Cl. 936 (1966). That is the situation here, and by reason thereof, this court does not have jurisdiction of plaintiff's case.

10. The citation of and reliance on the cases of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and Taylor v. Safeway Stores, Inc., Dist. Ct. Colo., No. C 3051, 365 F.Supp. 468, decided September 18, 1973, by the majority are erroneous. Those cases involve private employers and their employees. The cases arose under the 1964 Civil Rights Act, 78 Stat. 241, 42 U.S.C. § 2000e (1964), which expressly provides:

(b) The term "employer" * * * does not include (1) the United States, * * *.

Consequently, any standards or tests laid down by the courts in those cases apply only to cases involving private employers and their employees, and have no application whatever to cases such as the instant case where the suit is against the Federal Government. It would appear that the application by the majority of the standards and tests on racial discrimination laid down in those cases for private employment amounts to judicial legislation by the majority in direct conflict with the 1964 Civil Rights Act.

11. The direction by the majority to the Civil Service Commission to seek guidance from the Equal Employment

Act of 1972, Pub.L. 92-261, results in additional judicial legislation on the part of the majority. This is true for several reasons. In the first place, this law does not apply to the instant case because it was not passed until March 24, 1972, whereas the time for plaintiff's timely appeal expired October 17, 1970. All of the events in our case had taken place long before the Act was enacted.

In the second place, the Act expressly provides that the Act:

> Sec. 14 * * *
>
> [S]hall be applicable with respect to charges pending with the Commission on the date of the enactment of this Act and all charges filed thereafter.

The plaintiff's claim was not pending before the Commission when the Act was enacted, and, consequently, has no application to the instant case. Therefore, the majority commits error when it states that the Act:

> * * * [E]xpressly confers on the Commission power to grant back pay in cases such as this. * * *

In the third place, the Act grants exclusive jurisdiction of cases of this kind to the Federal District Courts. The Act provides:

> § 2000e–5(f) Each United States district court * * * shall have jurisdiction of actions brought under this subchapter. * * *

The U.S. Court of Claims is not mentioned in the Act. It is clear we have no jurisdiction of such cases. This fact adds emphasis to the above statement that the majority erred when it stated that the Act "expressly confers on the Commission power to grant back pay in cases such as this." Obviously, the majority's statement was meant to apply to *this case,* as it is the only case being considered.

In view of the foregoing, there is no legal way to apply the 1972 Act to this case, and the majority erred in attempting to do so.

## Conclusion

The main issue and actually the only issue in this case is whether or not this court has jurisdiction of the case. The question of racial discrimination and the prejudicial, inflammatory, and emotional contentions made in connection therewith by both the plaintiff and the majority are beside the point and need not be reached or considered.

The foregoing authorities, for the most part, have been thoroughly briefed, and discussed individually and in detail in my dissenting opinions in the cases of Chambers v. United States, *supra,* and Allison v. United States, *supra,* and for the sake of brevity have not been fully discussed here. I refer to such dissenting opinions in those cases, and, where applicable, make them a part of this dissenting opinion by reference. The majority opinions in those cases were clearly erroneous for all the reasons stated in my dissenting opinions. The *Chambers* case was especially a gross miscarriage of justice. Notwithstanding the erroneous decisions in those cases, the majority in the instant case cites them in "bootstrap" fashion to solve every jurisdictional predicament they find themselves in, as if those cases were "cure-alls" that take care of all jurisdictional problems in this area of the law without further citation of authority. This procedure merely compounds the errors previously made in *Chambers* and *Allison.*

It is significant, but not surprising, that the GAO holds the majority decisions in *Chambers* and *Allison* in such low esteem that it refuses to comply with them. No doubt that agency will take the same view of the majority opinion in the instant case because so many well-recognized and long-established principles of law have either been ignored or contradicted by the opinion. That impasse will obviously continue to exist until the Supreme Court gives its attention to the many errors of law made by the majority in their opinions in *Chambers, Allison* and the instant case.

The overwhelming array of authorities set forth above compels a decision in this case that defendant's motion for summary judgment be granted and plaintiff's petition dismissed. I would rule accordingly.

BENNETT, Judge (dissenting):

I dissent from the opinion of the majority because I believe that, in its rightful concern to correct what it believes to be racial discrimination, it has wrongfully construed the law. However much we may sympathize with any who have suffered or believe they have suffered discrimination, there is a definite limit to what we can do about it. In the instant case we have no jurisdiction.

The plaintiff in this case relies, in his petition, upon all the public laws, Executive orders and regulations which in recent years have been promulgated to eliminate racial discrimination from our society, particularly in public employment. Most of these measures are not in point in this particular case except as they make clear the intent of the President and the Congress, since about 1955, to insure equal employment opportunities for federal employees by prohibiting discrimination in employment and promotions on account of race, color, religion, or national origin. At the oral argument in this case, plaintiff's able counsel narrowed the authorities, upon which he principally relies, to our general jurisdictional statute, 28 U.S.C. § 1491 [the so-called Tucker Act], Executive Order 11246 [issued by President Johnson on September 24, 1965, 3 C.F.R. 567 (1966), 42 U.S.C. § 2000e note], Executive Order No. 11478 [issued by President Nixon on August 8, 1969, 3 C.F.R. 446 (1970), 42 U.S.C. § 2000e note], and upon the decisions of this court in Chambers v. United States, 451 F.2d 1045, 196 Ct.Cl. 186 (1971), and Allison v. United States, 451 F.2d 1035, 196 Ct.Cl. 263 (1971). Plaintiff's reliance upon these authorities, and others he cites, is misplaced as we shall see. The majority's reliance likewise misses the mark for the same reasons. The petition claims approxi-

mately $133,000 in back pay, because of alleged discrimination which prevented plaintiff's timely promotion between 1960–72, interest, legal fees, payments into the retirement fund, and future losses of pay projected to the year 1982 by reason of wrongful grade classification.

Plaintiff, a Negro, was employed as a GS–11, step 7, electronic engineer by the Federal Government at the Human Engineering Laboratory (HEL) at the Aberdeen Proving Ground. In 1967 he filed an agency complaint alleging that he had been denied promotion to grade 12 because of his race. Elaborate and extensive administrative procedures followed through November 3, 1971, and the administrative record consists of several thousand pages. Suit followed here on June 19, 1972.

The majority opinion has recited the history of the investigations of plaintiff's complaint and little more need be added. In summary, the first Equal Employment Opportunity officer found plaintiff's complaint "not valid." He recommended, however, that when plaintiff demonstrated willingness to work as a team member, he be considered for promotion, based on his performance. Thereafter, a hearing officer concluded, in a 307-page statement of findings and recommendations, that plaintiff's failure to be promoted "was not the result of racial discrimination at HEL but rather because Mr. Pettit did not merit a promotion. This finding is based upon the manner in which he performed his work assignments and his lack of cooperation and stability." Findings made state that Mr. Pettit "stirred up discord and controversy throughout his employment at HEL * * *. Mr. Pettit's record at HEL is one of cycles of reassignment, a brief period of satisfactory performance then bickering, strife and discord and then another reassignment followed by the same cycle all over again." Plaintiff interpreted his reassignments within HEL as management's efforts to avoid giving him a deserved promotion. The findings are that "[a]ctually, these

reassignments were made in an effort to help him." It was found that plaintiff refused to give due consideration to the professional opinions of colleagues and supervisors, was guilty of absenteeism, and had difficulty in writing technical reports. It was further found, however, that plaintiff had suffered certain improper harassment, although he in turn had been guilty of harassment of superiors. It was recommended that he be promoted "as soon as his performance merits." A third review by another hearing officer evaluated the administrative record and confirmed the prior findings that plaintiff did not merit promotion at the time but also accepted the prior recommendations.

There followed, on June 23, 1970, a Modification of the Findings of Fact and Recommendations (hereafter referred to as the modification) by Headquarters, United States Army Materiel Command (AMC), upon which plaintiff now places great reliance. The recommended action at this level was that "[i]n view of the discriminatory actions to which Mr. Pettit has been subjected by his supervisors, he should be given preferential consideration for promotion to the next GS–12 vacancy within Human Engineering Laboratories provided he is among the best qualified candidates referred." It was also recommended that supervisors who displayed discrimination against Negro employees should be disciplined and their work monitored.

The recommendation for preferential treatment in promotion, if found qualified, was unacceptable to plaintiff who demanded an immediate, unconditional promotion to GS–12, retroactive to 1960, immediate opportunity to compete for GS–13, and a restitution of expenses, attorney fees, and a cease-and-desist order against HEL. This was denied by the EEO officer on July 23, 1970. Plaintiff, however, was promoted to GS–12 effective August 10, 1970, pursuant to a recommendation by the Aviation Branch chief on June 10, 1970. Note that this recommendation was before the recom-

mendation in the modification and, therefore, not influenced thereby. This promotion was deemed by defendant to be compliance with the requirement for "preferential consideration" of plaintiff and "the maximum corrective action" that was authorized as a remedy for plaintiff by law or regulation. The GAO held that a retroactive promotion was not authorized, refusing to follow *Chambers* and *Allison, supra.* Plaintiff appealed to the Civil Service Commission without success. The appeal to CSC was denied because of the GAO ruling and because it was not filed within the 15-day time limit for appeal. Plaintiff had been amply warned of the time factor, Multiple appeals for administrative reconsideration by GAO, CSC and the Army were denied.

Plaintiff concludes from the modification of the findings that it is clear he would have been promoted "but for" said discrimination and jumps from that conclusion to reliance upon *Allison, supra,* for a back-pay award, future pay, and projected promotions. This is the view accepted by the majority opinion, which I must reject for several reasons which follow.

In the first place, the modification nowhere states that plaintiff would have been promoted "but for" discrimination. This is a conclusion unwarranted by the administrative record, is nowhere stated by the findings or conclusions therein, and is unsupported, therefore, by substantial evidence. To be sure, the modification stated that other Negro employees at HEL left their jobs "due *in part,* to the evidence of absence of further promotion opportunity." [Emphasis added.] We do not know what the other "parts" were or whether, like plaintiff, others also bore the burden of findings of lack of technical skill and instability. Mr. Pettit did not leave. It is easy to believe, from reading the modification, that HEL was truly deficient in affording equal opportunity for advancement of employees. This is not to say they all would have been promoted "but for" such discrimination, which is plain-

tiff's position. Affirmative findings were made that plaintiff was not promoted for other reasons. But for that, it would be clear his troubles were from discrimination alone. However, he stuck it out and was promoted before he had completed his administrative pursuit of relief and, since November 17, 1972, has been a GS–13. It is assuming too much to say that inevitably he would have been promoted sooner but for discrimination when his record was otherwise deficient, as found by all the reviewers, and not denied by the modification of their findings which did not recommend immediate promotion. What is important to note here is that discrimination was found and that administrative steps were taken to correct it, including preferential treatment for plaintiff's advancement when and if he qualified for it, as he ultimately did. Plaintiff does not contend that the modification speaks otherwise. His conclusion is that "taken together and in context" it proves that plaintiff, "but for" racial discrimination, would have been more rapidly promoted over the years. From this supposition, it is concluded by plaintiff, and in the majority opinion, that the recommendations for preferential treatment are an insufficient response to the Executive orders relied upon. The importance of this strained interpretation of the so-called modification is that it is essential to plaintiff's case because, unless he can show that *inevitably* he would have been promoted at some earlier point in time, "but for" discrimination, and irrespective of the findings that he did not merit it, because of "the manner in which he performed his work assignments and his lack of cooperation and stability," he will be unable to find shelter under the decision in *Allison*.

The *Allison* and *Chambers* decisions of this court are unprecedented in federal jurisprudence, are not followed by any other court, are unacceptable to the Comptroller General, were the product of a badly divided court, and they fashion totally new remedies by using the aforesaid Executive orders as their

foundation. They are, furthermore, in conflict with the decisions of at least two United States Circuit Courts of Appeals which have held that these Executive orders do not create any judicial remedy or expand the jurisdiction of the courts. Ogletree v. McNamara, 449 F.2d 93 (6th Cir. 1971); Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969), cert. denied, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970). *See also* Congress of Racial Equality v. Commissioner, 270 F.Supp. 537 (D.Md.1967); generally, *see* Manhattan-Bronx Postal Union v. Gronouski, 350 F.2d 451 (D.C. Cir. 1965), cert. denied, 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469 (1966). Plaintiff would further expand the *Allison* decision to encompass not only an award of back pay but future pay and projected promotions as well. Plaintiff also would have the court take yet another step beyond *Allison* and directly award the relief requested instead of remanding it to the agency to make findings that would enable the court to grant relief if the agency did not do so. The court has opted for the remand at this stage of the proceedings.

This writer was not a member of the court when it decided the *Chambers* and *Allison* cases. Because I feel strongly that what was decided there should not be extended further, as the court does here, I deem it proper to make a full statement of my reasons. The defense that in this case the court has no jurisdiction is summarily rejected by the court as not meriting further discussion in view of its decisions in *Chambers* and *Allison*. A defense of jurisdiction, however, is fundamental and serious, and I will discuss it in the hope that wiser and higher authority will redirect the court to the proper path of law.

*Chambers* was a case in which the court, in reliance upon Executive Order No. 11246 and its successor, Executive Order No. 11478, *supra*, awarded back pay to a woman for a job she never held. In that case the defendant stipulated that discrimination was the sole cause of failure to hire. The majority in that

case, accepting the stipulation that "but for" the discrimination she would have been employed, concluded that this eliminated the bar to relief which would have existed if the court had been required to exercise the discretion of an appointing official. United States v. McLean, 95 U.S. 750, 24 L.Ed. 579 (1877). It then said that the sole question left for decision was whether in the circumstances the pertinent Executive order provided a legal basis for judicial award of back pay. Answering that question in the affirmative, the court specifically rejected the decision of Judge Blackmun (now Justice Blackmun) in Gnotta v. United States, *supra* 415 F.2d at 1278, quoting from the District Court opinion, wherein it was held that:

> * * * "None of the executive orders or regulations which the complaint cites purports to confer any right on an employee of the United States to institute a civil action for damages against the United States, in the event of their violation, even if it should be established that plaintiff's failure to have been promoted as an employee of the Corps of Engineers was in fact due to discrimination in violation of the Executive Orders pleaded. Congress has complete power either to create or to refuse to create such a remedy. It did not authorize civil actions for damages under any of the laws (including the Executive orders and regulations) applicable to facts pleaded by plaintiff in this case."

The Eighth Circuit court was of the opinion, also, that the Tucker Act was not broad enough to confer jurisdiction in such a case. The majority in *Chambers* said that in promulgating the Executive orders, which did not mention the courts as a forum in which to force compliance with the policies there set forth, the President was aware of their existing jurisdiction and the case history pursuant to which the Court of Claims had granted judgments for violation of rights given under Executive orders and departmental regulations in cases of ille-

gal *discharge* of Government employees, citing Simon v. United States, 113 Ct.Cl. 182 (1949). *Simon*, however, was not a case comparable to *Chambers*. *Simon* involved an employee who had lost his job because defendant was in violation of valid Civil Service regulations fully authorized by law. None of those considerations obtain here. But, the majority in *Chambers* boldly went even further and concluded that "absent such a clear manifestation that access to the courts is prohibited where a specific right has been created, we think it is the intent of Congress that the general jurisdictional statutes are controlling." 451 F.2d at 1053, 196 Ct.Cl. at 199. The Administrative Procedure Act was then cited as a general statute creating judicial remedies for *legal wrongs* because of agency action. From this, it was reasoned that the Executive order "simply added another class of persons entitled to seek relief thereunder, namely, applicants of minority races." The majority expressly overruled its precedent in Hyman v. United States, 157 F.Supp. 164, 138 Ct. Cl. 836 (1957), which had held no back pay could be awarded for a job never held. Where *Chambers* went wrong, and what makes it an unacceptable precedent, is that no legal wrong was committed which was redressable in a court of law. The statute, 5 U.S.C. § 7151 [from the Civil Rights Act of 1964, § 701(b), 78 Stat. 254], was cited by the court as the statutory authority constituting the foundation for the Executive orders and its decision predicated thereon. But, that was wrong because the very same section 701(b) [42 U.S.C. § 2000e(b)], of the same Act specifically excluded the United States from its definition of an "employer" covered by the terms of the Act. Thus, though Congress stated a federal policy against discrimination in employment, a policy implemented administratively by Executive orders, it did not create and was under no obligation to provide a remedy through the courts. Lynch v. United States, 292 U.S. 571, 582, 54 S.Ct. 840, 78 L.Ed.2d 1434 (1934).

Chief Judge Cowen and Judge Skelton dissented in *Chambers*. The Chief Judge concluded that the stipulation and the administrative decision were unsupported by any substantial evidence. Judge Skelton, who was joined by Judge Collins, collected the authorities in a 46-page dissent. It would serve no useful purpose to extend this statement by a repetition of the scores of authorities set forth by Judge Skelton and which I adopt by reference; suffice it to say that his citations were in point. This is especially true of his reliance upon United States v. King, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), which held that the Court of Claims could not be inferred as having jurisdiction to grant declaratory judgments. It is a court with jurisdiction limited to what Congress has specifically granted by statute. Even earlier, the Supreme Court said in United States v. Shaw, 309 U.S. 495, 500, 60 S.Ct. 659, 661, 84 L.Ed. 888 (1940):

> * * * we may lay the postulate that without specific *statutory* consent, no suit may be brought against the United States. [Emphasis added.]

Also, *Gnotta, supra,* which held that Executive Order No. 11246 (later Executive Order No. 11478) had no provision therein purporting to confer any right on an employee of the United States to institute a civil action for damages against the Government. Whatever administrative relief is provided by such orders, and regulations made pursuant thereto, is the limit of relief thereunder. Further, *Gnotta* held that the Administrative Procedure Act is not an implied waiver of governmental immunity from suit. As Judge Skelton stated in his dissent in *Chambers*:

> Executive Order 11478 on which plaintiff principally relies was nothing more than the statement of a policy by the President. It was for the guidance of Federal employing agencies, as stated in Congress of Racial Equality v. Commissioner, Social Sec. Admin., *supra*, and Manhattan-Bronx Postal Union v. Gronouski, *supra*.

> The President has many policies, such as those against inflation, against high interest rates, for full employment, for international peace, for adequate public housing, for law and order, against riots in the streets, against the busing of children from one neighborhood to another to intergate the races in the schools, and many others. These policies do not vest any rights in individuals, nor give them a cause of action against the government if any of such policies are violated. These policies do not command nor even suggest the payment of money to any citizen where a policy is violated. This is the situation facing the plaintiff with respect to E.O. 11478. It was a policy for the guidance of Federal agencies and nothing more. If it was violated, the plaintiff has no right to sue the government in this court by reason thereof. [451 F.2d at 1081–1082, 196 Ct.Cl. at 248.]

*Chambers* provided the theoretical basis for *Allison, supra,* decided by this court on the same day. In *Allison,* certain Negro NIH employees brought a suit for back pay under Executive Order No. 11246 (now E.O. 11478), alleging that they had been denied promotion due to racial discrimination. Discrimination was established administratively but the Comptroller General ruled that there was no authority in law " 'to award back pay to employees for the periods that promotions are improperly delayed as the result of discrimination or for some other unjustified or unwarranted reason.' " 451 F.2d at 1037, 196 Ct.Cl. at 267. Suit followed. Plaintiffs claimed that they would have been promoted "but for" the discrimination. This is not what the administrative decision found. What it did say was that there was a " 'pattern of racial discrimination' existing 'over a period of several years' in the section in which plaintiffs are employed." 451 F.2d at 1037, 196 Ct.Cl. at 268. This was believed by the administrators to be insufficient to effect mass promotions on the basis of senior-

ity alone without regard to merit and work qualifications, and that to do so would be a perversion of the merit system.

The court said that *Allison* was not entirely like *Chambers* where it had held the stipulation of discrimination provided that plaintiff would have been appointed "but for" the discrimination. The *Allison* majority, however, reiterated its holding in *Chambers* that Executive Order No. 11478 provided a legal basis for awarding back pay *if* plaintiffs could meet the "but for" test and if something else, such as lack of qualifications or appropriations, had not prevented the promotions. The court also ruled that the administrative findings revealed that some of the plaintiffs would have been so promoted but for "discrimination in gross." 451 F.2d at 1038, 196 Ct.Cl. at 269. The court denied plaintiffs' motion for summary judgment without prejudice and defendant's cross-motion, to allow plaintiffs to apply for administrative findings "which shall show, person by person, whether such person would have been promoted, when, and to what grade or grades, in light of such person's qualifications, the qualifications of competitors, the existence of vacancies, the availability of funds, and all other factors that would have properly influenced the exercise of discretion in the making of an actual promotion at the time a *promotion was due."* 451 F.2d at 1039, 196 Ct.Cl. at 271.

Judge Skelton, joined by Judge Collins, again dissenting, repeated his *Chambers* rationale and the authorities there cited. The court's action in *Allison* was characterized as an unwarranted and unauthorized interference with the discretionary function of an agency which had already indicated that promotions merited would be granted and that steps to encourage such promotions would be taken. The dissent pointed out that what the court really proposed to do was to appoint plaintiffs to jobs retroactively so that they could receive the salaries thereof, but that the court was without the equitable power to promote

or appoint. Congress, said Judge Skelton, had not waived the immunity of the sovereign in these matters nor had it turned them over to the Judiciary for policing. Sovereign immunity cannot be waived by implication but "must be unequivocably expressed." United States v. King, 395 U.S. at 4, 89 S.Ct. 1501.

The remand in *Allison* required the agency to speculate what would have been done regarding possible promotions over the span of the 5 previous years. Thus, the sword of the *Allison* court was raised over the agency's head. If the agency fails to do what has been ordered, or if the agency makes findings favorable to plaintiffs, the court, as "promotion watchdog," would "proceed to appoint (promote) them to the jobs and award them salaries and make the appointments retroactive." (Skelton, *J.*, dissent, 451 F.2d at 1040, 196 Ct.Cl. at 273.) This constitutes the assumption of a formidable responsibility. As Professor Davis has stated:

* * * Do we want courts inquiring into personnel management—salary increases, sick leave, office hours, allocation of parking spaces in the basement of the agency's building? * * *. [4 K. Davis, Administrative Law Treatise § 28.16, at 82 (1958).]

In Ogletree v. McNamara, 449 F.2d 93 (6th Cir. 1971), the Sixth Circuit relied on *Gnotta* to reach a comparable result. The plaintiffs in *Ogletree* also relied on Executive Order No. 11246. They claimed racial discrimination. The district court held that their effort to enjoin operation of the Civil Service anti-discrimination regulations and the Air Force promotion system constituted an action against the United States as to which it had not consented to be sued by waiver of its immunity. The circuit court affirmed the decision and dismissed the complaint without prejudice to plaintiffs' right to demonstrate that they had exhausted their administrative remedies or to show that such exhaustion would have been futile. Plaintiffs had not introduced such evidence in their original action in the district

court. So, in addition to the lack of jurisdiction of the court over the subject matter by reason of Executive orders, plaintiffs had failed, as they failed here, to show that they had fully explored their administrative remedies. Our plaintiff says that it would have been an idle gesture to do so, but we have no way to be sure of that fact. We note with particular interest plaintiff's success in obtaining administrative consideration of his appeal right up to his belated appeal to the Board of Appeals and Review of the Civil Service Commission. The court makes much of the fact that plaintiff wanted to wait to hear the results of his appeal of the recommendations in the modification's findings and did not hear until the last minute on a Friday what they were and thus was precluded by the intervention of a weekend from taking action sooner. The fifteenth and final day for appeal fell on Saturday, October 17, 1970. The court deems his telephone call on the following Monday as a sufficient appeal and attempt to exhaust administrative remedies. The court says that plaintiff was not told that his notice of appeal would have to be in writing. The court is in error. Plaintiff was advised in defendant's letter of September 22, 1970, to which the court otherwise alludes, that if plaintiff was dissatisfied with the disposition of his case that he could request further review and decision and was directed to submit his *letter* of appeal to the CSC Board of Appeals and Review within 15 days from receipt of the September 22, 1970 notice (October 2, 1970), with a *copy* of said letter to the EEO officer at Aberdeen for forwarding through channels. Plaintiff did not make such a written appeal until October 20, 1970, received by defendant October 22, well out of time. Plaintiff's deliberate failure to make a timely and proper appeal, which he could have waived had he been satisfied with the results of his other appeal then pending, and his failure even to ask the CSC Board of Appeals and Review to waive its time limit, prejudices his case before

this court and invalidates any pretense that he sought to exhaust his administrative remedy in a timely and reasonable manner. Plaintiff made a deliberate choice not to appeal within the time limit of which he was advised, and he was not prevented by circumstances beyond his control from filing a timely appeal. This choice constituted a failure to exhaust the administrative remedy which is a required prerequisite to suit where the exhaustion is mandatory, as here. Haynes v. United States, 418 F.2d 1380, 190 Ct.Cl. 9 (1969); Pine v. United States, 371 F.2d 466, 178 Ct.Cl. 146 (1967); Gernand v. United States, 174 Ct.Cl. 936, 939–940 (1966), modified on other grounds, 412 F.2d 1190, 188 Ct.Cl. 544 (1969); Blackmar v. United States, 354 F.2d 340, 346, 173 Ct.Cl. 1035, 1044 (1965).

In Small v. United States, 470 F.2d 1020, 200 Ct.Cl. 11 (1972), the court was confronted with a somewhat similar problem to plaintiff's. Discussing there the Executive orders, it said that none of them mentioned possible lawsuits. It said that while race could have been a factor in plaintiff's failure of promotion, the administrative relief provided was the limit of the remedy available in any event because the administrative decision was supported by substantial evidence, and was not arbitrary or capricious. It refused to make a remand as in *Allison*, stating that the plaintiff's case had been examined in detail administratively and the adoption of any schedule of supposititious promotions would be an exercise of the imagination, without record support. The court derided the idea of reconstructing a "hypothetical career" for plaintiff, a technique it suggested would appear to have limitless possibilities. It said that to postulate supposititious promotions would be an exception to general refusal to grant back pay in such situations and could be permissible only where there was a specific act of discrimination which was the cause of a failure to promote at a definite time and place and in a manner that could be identified. Oth-

erwise, the court said, a promotion would be produced by the mere imagination of a court of law. Hypothetical promotions on top of hypothetical promotions were described as "particularly suspect." It said that back pay is not automatic for everyone who has a valid grievance. The case was not decided on the basis of jurisdiction, as were *Chambers* and *Allison,* but upon the basis of the foregoing comments and a belief that the administrative remedy in *Small* was fair and full under the facts of that case. I would follow that reasoning and say the same is true in the present case, allowing for the differences in the facts which illustrate more clear-cut discrimination in plaintiff Pettit's case.

Plaintiff argues, although the court does not, that the facts of his case do not fit *Allison.* Plaintiff argues that here he has already met the primary requirement that he would have been promoted "but for" discrimination, that no remand is called for to establish this fact, and that he is entitled to judgment now. However, the "but for" showing has not been conceded by defendant at any point since plaintiff's complaint was first filed in 1967 and is denied. On this record and on motions, it is improper for the court either to make such a finding as plaintiff claims, and thus usurp the discretionary authority and function of the Executive, or to take jurisdiction of this case and require additional findings on remand which would implement a judgment for money damages when rendered. The case should be dismissed and not remanded. This protracted matter has run its legal course.

The court in this case has wandered far afield from *Small* and even from *Chambers* and *Allison* and is lost in a thicket of its own creation. Its wandering can best be observed by reference to how it has strained to find a way to get around its "but for" test. The court here is faced with an extensive administrative record and findings which decline to say that plaintiff would have been promoted but for discrimination and, on the contrary, flatly state that he was not promoted because he lacked cooperation and stability and was not technically qualified on pertinent dates. The court alludes to the modification recommendation that because there was some discrimination this mandated preferential treatment for plaintiff *if* he should later become "among the best qualified" eligibles for promotion. This modification falls far short of finding nonpromotion "but for" discrimination. The court, however, says these clear findings "are not without ambiguity" and then somehow concludes that the modification, nevertheless, represents a rejection of the several findings that plaintiff's nonpromotion was due to lack of qualifications. Of course, this curious leap is the court's own finding because it is nowhere made in the modification of findings by AMC. The court must actually realize that because it admits the "but for" test has not literally been met here and that the record, as it stands on these pending motions, is insufficient for a back-pay award under its *Chambers* and *Allison* precedents, which are explicitly reaffirmed. The court says that the modifications "come close to admitting that plaintiff was denied promotion for racial reasons." It says they "strongly imply" such was the case. Faced with the facts of record and its own admissions the court concludes: "The initial Finding that Pettit's nonpromotion was due to his lack of qualification was *emphatically rejected* by higher authority in words *implying a belief* the real cause was discrimination, * * *." [Emphasis added.] It is submitted that an emphatic rejection would have to be by something more than implication just as "plastic glass" must be one or the other. We have findings which say that plaintiff would have been promoted but for discrimination, or we don't.

Although the court pays lip service to the established doctrine that it shall not usurp the discretionary authority of the Executive department over appointments and promotions, it does just that by assuming jurisdiction which it does not

have to adjudicate this case by stretching its "but for" test to a new dimension. The court does this by saying that it has jurisdiction under Executive orders, and under 28 U.S.C. § 1491, and that all a Government employee has to do to get into this court in a civil rights case is to allege that he is in a minority class, that he failed of promotion despite having the necessary qualifications, that he *"might have reasonably expected selection for promotion* under the defendant's on-going competitive promotion system" [emphasis added], and that his supervisors betrayed prejudice against his minority *in other matters.* What flies out of Pandora's box next is the court's proposition that having made such a prima facie showing the burden of proof shifts to the Government to show that nonpromotion was due to some reason other than discrimination. Cited as authority for this proposition are McDonnell Douglas Corp. v. Green, 411 U. S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Taylor v. Safeway Stores, Inc., Dist.Ct.Colo., No. C 3051, 365 F.Supp. 468, decided Sept. 18, 1973. Those cases are not in point for at least four pertinent reasons. They interpret the Civil Rights Act of 1964, 78 Stat. 241, 42 U.S.C. § 2000e et seq. That Act, as mentioned before, in section 2000e(b), does not include the United States as an employer. The court continues to overlook this fact, as it has in prior decisions predicating relief in part on this Act as the statutory foundation for Executive orders against discrimination in Government enforceable in court. Further, the plaintiffs in *McDonnell Douglas* and *Taylor* were not Government employees as is our plaintiff Pettit. Also, those cases did not apply the vague, subjective, unenforceable, unconstitutional standard which the court uses here where it requires only that plaintiff "might have reasonably expected selection for promotion," and his supervisors showed bias toward his race *in other matters* unrelated to the particular claim, as an adequate basis for complaint and for the shift of the burden of

proof. Finally, in *McDonnell Douglas* there was no dispute about the employee's qualifications as there is here. In *Taylor* there was the matter of unreliability of manipulated work records of the employee furnishing a pretext for his discharge. There are no such questions in the present case and the majority opinion elsewhere rejects plaintiff's attempt to draw on discharge cases as relevant to his promotion claim.

Having satisfied itself that plaintiff either would have been promoted but for discrimination, or upon its new test that his suspicion is sufficient to require defendant to prove otherwise, the court remands this case to the Civil Service Commission to make findings "of the grade and pay of the position plaintiff would have filled, but for discrimination, and the date of the personnel action by which he would have filled it." ·The court then says that the CSC can seek guidance from the Equal Employment Opportunity Act of March 24, 1972, Pub.L. 92–261, 86 Stat. 103, 42 U. S.C. § 2000e–5 (Supp. II, 1972), "which expressly confers on the Commission power to grant back pay in cases such as this." Plaintiff's complaint, however, arose as early as 1960 and was filed in 1967, and nothing in the 1972 Act provides a retroactive remedy. The Act applies only to charges "pending with the Commission on the date of enactment of this Act and all charges filed thereafter." 86 Stat. 113, 42 U.S.C. § 2000e–5 note (Supp. II, 1972). Plaintiff's appeal to the CSC Board of Appeals and Review was rejected as untimely by the board in a letter to plaintiff dated January 20, 1971. The letter indicated that the board decision was final and that there was no further right to appeal. Plaintiff, consequently, had no appeal pending with the CSC on March 24, 1972, when Pub.L. 92–261 became law.

The thrust of the remand, however, is that if the Commission does not accept the case, make findings and award relief the court will do it because its order requires that it be advised at regular intervals of the progress of further ad-

ministrative proceedings before the Commission and it retains jurisdiction of the case. This accords, apparently, with plaintiff's own representations that this court itself has jurisdiction under the 1972 Act to grant direct relief to him for back pay and to promote him retroactively. That, of course, is in error. The 1972 Act permits an appeal from agency action or the CSC directly to the appropriate United States district court. It does not mention the Court of Claims. Appeals from the district courts in these matters are required by the Act to go to the circuit courts of appeals. 42 U.S.C. § 2000e–5(j). ...

In reaching its conclusion that plaintiff should have been promoted before he was, the court wrongly ignores what it knows to be its lack of right and competence to exercise the discretionary function of the Executive and to make such a finding itself. But, it assumes jurisdiction which it does not have stemming from the Executive orders, and inapplicable statutes, and clearly threatens that it will promote plaintiff retroactively if promotion is not otherwise provided, which it has no power to do. Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); United States v. McLean, 95 U.S. 750, 24 L.Ed. 579 (1877); Tierney v. United States, 168 Ct.Cl. 77, 80 (1964). Plaintiff has no right to maintain a suit for the salaries of grades higher than those to which he was appointed, even if it is assumed that the failure to promote was wrongful, for whatever reason. Amundson v. United States, 120 F.Supp. 201, 128 Ct.Cl. 80 (1954); Dvorkin v. United States, 101 Ct.Cl. 296, cert. denied, 323 U.S. 730, 65 S.Ct. 66, 89 L.Ed. 586 (1944). As a corollary, when an employee has received the salary of the office to which he was appointed, he has received all that he is entitled to receive. Ganse v. United States, 376 F.2d 900, 180 Ct.Cl. 183 (1967). Until *Chambers* and *Allison* this court has always held that, where exercise of discretion is involved and where violation of regulations authorized by statute is not involved, it is not proper for this court to become involved in the appointment or promotion business—civilian or military. Such cases are legion. *Tierney, supra,* collects some of them. The court here remands in the face of an administrative record already consisting of about 3500 pages compiled over a 4-year period and containing definitive, detailed findings and conclusions upon all of the pertinent issues by four administrative levels of review. Executive Order No. 11246, section 4, however, requires only one review. If the court is going to rely on the order, it should be satisfied.

Plaintiff also cites the Back Pay Act of 1966, 80 Stat. 94, 5 U.S.C. § 5596. There is nothing at all in that Act granting the right to judicial relief for failure to receive a promotion. It refers instead to unjustified "withdrawal or reduction of all or a part of the pay, allowances, or differentials of the employee * * *." Nothing in the legislative history of the Act suggests that Congress intended to authorize payment of back pay to employees not promoted as a result of discrimination or for any other unjustified cause.

Plaintiff also cites certain federal regulations believed to have been promulgated to carry into effect the policies laid down by the Executive orders in issue here and says that violation of these regulations gives the court jurisdiction of the case. But, none of these regulations spells out any procedure which has been violated in this case. Only if the Government does not follow its regulations can it be argued that a cause of action arises. Such regulations must, in turn, be based on statutory authority waiving the sovereign immunity to suit. The court has properly rejected plaintiff's reliance upon regulations and their alleged violation as a basis for plaintiff's recovery. It also properly rejects as inapposite plaintiff's authorities on this issue.

### Summary

Restated, in summary, the record and the law clearly demonstrate the follow-

ing 21 major reasons why plaintiff is not entitled to recover in this case and why the court is in error:

(1) The court says it has jurisdiction to remand, pursuant to 28 U.S.C. § 1491, as amended by Pub.L. 92–415 of August 29, 1972, 86 Stat. 652. That Act gives the court remand authority in two situations: (a) to provide an entire remedy afforded by its judgment and (b) in any case within its jurisdiction. Since it has always been held that this court can only enter money judgments, United States v. King, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), and it has entered no such judgment here, it cannot remand this case to the Civil Service Commission under proviso (a), above. Since the case is not within its jurisdiction, being a claim for promotion, it cannot remand under proviso (b).

(2) The court says that it has jurisdiction pursuant to Executive Orders Nos. 11246 and 11478. But, no Executive order mentions the Court of Claims or purports to confer any jurisdiction upon this or upon any other court to implement the policies described in said orders relied upon by plaintiff and the court. On the contrary, it has been held that Executive orders do not create any judicial remedy or expand judicial jurisdiction. Ogletree v. McNamara, 449 F.2d 93 (6th Cir. 1971); Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969), cert. denied, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970). See also Congress of Racial Equality v. Commissioner, 270 F.Supp. 537 (D.Md.1967); see generally Manhattan-Bronx Postal Union v. Gronouski, 121 U.S.App.D.C. 321, 350 F.2d 451 (1965), cert. denied, 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469 (1966). Executive orders can neither add to nor detract from the jurisdiction of the Court of Claims which is a court of limited jurisdiction derived from statute only.

(3) The United States has never waived its sovereign immunity for this type of claim and no judicial legislation can do so. Such a waiver must be strictly construed and cannot be implied.

United States v. King, supra; Soriano v. United States, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); United States v. Sherwood, 312 U.S. 584, 590–591, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). "The Court of Claims is a special tribunal established to hear and determine suits against the United States on claims of specified classes. Except as Congress has consented, there is no right to bring these suits against the United States, and therefore the right arising from the consent is subject to such restrictions as Congress has imposed." Luckenbach S. S. Co. v. United States, 272 U.S. 533, 536, 47 S.Ct. 186, 187, 71 L.Ed. 394 (1926). U. S. Const. art. III, § 1. Congress has stated a federal policy against discrimination in Government employment, a policy implemented by Executive orders. But, Congress did not create and was under no obligation to provide a remedy through the Court of Claims. United States v. Shaw, 309 U.S. 495, 500, 60 S.Ct. 659, 84 L.Ed. 888 (1940); Lynch v. United States, 292 U.S. 571, 581–582, 54 S.Ct. 840, 78 L.Ed. 1434 (1934).

(4) The Administrative Procedure Act does not give this court jurisdiction of this case nor waive the immunity of the sovereign from suits of this type. No legal wrong has occurred here which could be a basis for appeal and no statute has conferred upon plaintiff the right to bring such a suit. Blackmar v. Guerre, 342 U.S. 512, 515–516, 77 S.Ct. 410, 96 L.Ed. 534 (1952); Gnotta v. United States, 415 F.2d at 1277.

(5) The Civil Rights Act of 1964 is inapplicable to plaintiff's claim here because the United States is not defined therein as an employer for purposes of that Act. 42 U.S.C. § 2000e(b).

(6) The Back Pay Act of 1966, relied on by plaintiff, 80 Stat. 94, 5 U.S.C. § 5596, does not provide judicial relief for failure to get promoted.

(7) The Equal Employment Opportunity Act of 1972, 86 Stat. 103, 42 U.S.C. § 2000e (Supp. II, 1972), confers no jurisdiction on the Court of Claims. This was the first statute providing judicial

relief to Government employees claiming back pay for violation of their civil rights against discrimination. But, it specifies that the suits must be brought in the United States district courts. 42 U.S.C. § 2000e–5(f)(3) (Supp. II, 1972). Such claims are appealable only to the courts of appeals. 42 U.S.C. § 2000e–5(j) (Supp. II, 1972). Further, such claims must have been pending with the Civil Service Commission on the date the Act became law, March 24, 1972. 86 Stat. at 113, 42 U.S.C. § 2000e–5 note (Supp. II, 1972). Plaintiff had no such claim then pending, having forfeited his right to appeal by letting the time for appeal lapse. If the Court of Claims had any jurisdiction over such claims prior to the 1972 Act, as *Chambers* and *Allison* improperly claimed, it was clearly divested by that Act. Even when suits are authorized they must be brought only in designated courts. Minnesota v. United States, 305 U.S. 382, 388, 59 S.Ct. 292, 83 L.Ed. 235 (1939).

(8) By the same token, the Civil Service Commission to which the court remands this case for plaintiff's relief, has no jurisdiction because plaintiff did not file a timely written appeal as he was advised to do. His failure to do so was his own deliberate choice and without extenuating circumstances. Plaintiff has failed to exhaust his administrative remedy and cannot now be heard to complain. Gernand v. United States, 174 Ct.Cl. 936, 939 (1966), modified on other grounds, 412 F.2d 1190, 188 Ct.Cl. 544 (1969); Hutton v. United States, 154 Ct.Cl. 34, 39 (1961); Monday v. United States, 146 Ct.Cl. 6, 9 (1959), cert. denied, 361 U.S. 965, 80 S.Ct. 594, 4 L.Ed.2d 545 (1960); Bodson v. United States, 158 F.Supp. 948, 949, 141 Ct.Cl. 532, 534 (1958); Henry v. United States, 153 F.Supp. 285, 286, 139 Ct.Cl. 362, 363 (1957).

(9) Plaintiff seeks a declaratory judgment which this court has no jurisdiction to render. United States v. King, 395 U.S. 1, 89 S.Ct. 1501 (1969).

(10) The Court of Claims has jurisdiction to grant money judgments but does not have jurisdiction to make or to command appointments or promotions in the Government service for to do so would be usurpation of the discretionary function of the Executive. United States v. King, *supra*; Glidden Co. v. Zdanok, 370 U.S. 530, 577, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962); Tierney v. United States, 168 Ct.Cl. 77 (1964).

(11) The Court of Claims is not empowered to review de novo the discretionary decisions of the Executive agencies as long as they conform to their own procedural requirements. The court concedes that defendant has not violated any of its regulations in this case. Schlegel v. United States, 416 F.2d 1372, 1375, 189 Ct.Cl. 30, 35–36 (1969), cert. denied, 397 U.S. 1039, 90 S.Ct. 1359, 25 L.Ed.2d 650 (1970); Morelli v. United States, 177 Ct.Cl. 848, 858 (1966).

(12) The plaintiff's contention that he would have been regularly promoted in the past 12 years and would be regularly promoted in the future to higher grades, without discrimination being practiced against him, is imaginary and neither the administrator nor the court is entitled to engage in such speculation. The Court of Claims, especially, cannot be the "promotion watchdog" over the millions of federal employees. It cannot create hypothetical careers for these employees and postulate promotions by the mere imagination of judges. Small v. United States, 470 F.2d 1020, 1036, 200 Ct.Cl. 11, 20 (1972).

(13) After investigation and hearing plaintiff was accorded administrative relief by his promotion and this is the only remedy to which he is entitled by law since retroactive and future promotions are not authorized by law as a judicial or administrative remedy under any statute in effect at the time plaintiff's claim arose. Keim v. United States, 177 U.S. 290, 20 S.Ct. 574, 44 L.Ed. 774 (1900); Tierney v. United States, *supra;* Donnelly v. United States, 134 F.Supp. 635, 133 Ct.Cl. 120 (1955); Amundson v. United States, 120 F.Supp. 201, 128 Ct.Cl. 80 (1954).

(14) Since the Court of Claims can grant money judgments only for money presently due, and since plaintiff never held the positions for which he claims back pay, he cannot recover such pay by projecting suppositious promotions. Plaintiff has no inherent or constitutional right to any Government employment. United States v. McLean, 95 U.S. 750, 24 L.Ed. 579 (1877); Keim v. United States, *supra*; Small v. United States, *supra*; Tierney v. United States, *supra*; Donnelly v. United States, *supra*; Amundson v. United States, *supra*. Even if the failure to promote was wrongful, for whatever reason, it does not give rise to a cause of action in court. Amundson v. United States, *supra*; Dvorkin v. United States, 101 Ct. Cl. 296, cert. denied, 323 U.S. 730, 65 S. Ct. 66, 89 L.Ed. 586 (1944); Ogletree v. McNamara, *supra*; Gnotta v. United States, *supra*.

(15) Plaintiff draws analogies to tort cases but if he has suffered a tort the Court of Claims has no jurisdiction to grant him relief for it. This is clear from the language stating our basic jurisdiction in the Tucker Act, 28 U.S.C. § 1491; also, *see* Eastport S. S. Corp. v. United States, 372 F.2d 1002, 1010, 178 Ct.Cl. 599, 609 (1967); McCreery v. United States, 161 Ct.Cl. 484 (1963). Indeed, plaintiff would be without remedy in any federal court because of the discretionary exception in the Federal Tort Claims Act. 28 U.S.C. §§ 1346, 2680; 25 Vand.L.Rev. 452 (Mar. 1972).

(16) The decision by the court in this case is based upon its holdings in *Chambers* and *Allison, supra,* which in turn were founded upon the purported authority which certain Executive orders give to the Court of Claims under the further assumption that such orders derive from statutory authority giving us jurisdiction. Since it is clear from the decisions of other courts that such orders do not confer judicial jurisdiction and cannot, and since it is further clear that this court was in error in relying on statutory authority of the Civil Rights Act of 1964 which does not encompass the Federal Government within its terms as an "employer" for purposes of the Act, the decision in the instant case is insupportable in law, as are the decisions in *Chambers* and *Allison*. Gnotta v. United States, *supra*; Ogletree v. McNamara, *supra*; Congress of Racial Equality v. Commissioner, *supra*. If this court is permitted to persist in its error, and if the Comptroller General continues to refuse to be a part of it,. every promotion claim by a member of a minority class will require a- separate lawsuit no matter how frivolous it may be.

(17) Assuming for discussion alone that *Chambers* and *Allison* are adequate precedents for taking jurisdiction of the present case, the facts of the instant case do not fall within their orbit. Those cases held that it was necessary for plaintiffs to show that they would have been promoted "but for" discrimination against them. There is no such administrative finding in this case but explicit findings are to the contrary and give other reasons for plaintiff's non-promotion. The court thinks that it is just because the administrative findings in this case were made before *Chambers* and *Allison* were announced that the "but for" test was not literally applied administratively. Yet, it mysteriously reads into the final modification of administrative findings a rejection of all prior findings that plaintiff's nonpromotion was for reasons other than discrimination. The court usurps the discretionary authority of the Executive in so doing, acts without substantial evidence which is all to the contrary, and the court makes a finding which it has no authority to make without a trial of its own. It also makes a finding inconsistent with its own discussion of the administrative findings which it says only "come close" or "strongly imply" meeting the "but for" test and, standing alone, are inadequate for a backpay award.

(18) Faced with facts and law which do not support its assumption of jurisdiction and confronted with its

precedents which do not fit the facts of this case, the court promulgates a new guideline to justify taking jurisdiction in promotion cases by announcing that a qualified member of a minority class only has to make a prima facie case to get into court whereas other Government employees are barred altogether. Such a prima facie case may be founded on plaintiff's belief (suspicion) that he was denied a promotion that he "might reasonably have expected" and where his supervisors "betrayed *in other matters* a predisposition towards discrimination against members of the minority involved." [Emphasis added.] Upon such a showing the burden of proof is then shifted to defendant to show that the suspicion is ill-founded as a basis for recovery. This is probably the most administratively burdensome, vague, unreasonable, unworkable, discriminatory rule ever announced by this distinguished court which has prided itself upon its understanding of the complex workings of the Government machinery, its prior even-handed treatment of citizens without regard for race, economic condition, or other distinguishing characteristics, and which has treated the Government and citizen with equal justice. By eliminating the requirement for any causal connection between plaintiff's nonpromotion and the bias of his supervisors the court has, without openly saying so, thrown out of the window its "but for" test which was the cornerstone of its decisions in *Chambers* and *Allison* and which it claims here to reaffirm and to rely upon. The new test, the suspicion test, without even requiring a connection to bias resulting in nonpromotion, of course, falls of its own weight and illogic. The court relies for this new rule upon cases not in point as they involved interpretation of a 1964 statute not applicable to this court, or to the Government, or involving Government employees, and the factual circumstances were also quite different as more fully developed in the main body of this opinion. What might be feasible in the labor relations, employment prac-

tices, and administration of a corporation is not necessarily analogous to Government and Congress declined in 1964 to make it so. The court, however, legislates a responsibility upon the defendant to engage in the rankest speculation, dating back many years, concerning plaintiff's possible assignments, and with a command to construct for him a hypothetical career, past and future, as a basis for a cash award.

(19) The court has not discussed plaintiff's claim for interest, legal fees, and other expenses and losses projected to the year 1982. It has no authority to include them in a judgment absent contract or statutory authority which is missing here. 28 U.S.C. §§ 2412, 2516. However, the implication is left that if plaintiff is not accorded relief satisfactory to him by the Department of the Army or the Civil Service Commission he can come back to the court, which is retaining jurisdiction of this case pending further proceedings which it has ordered. The court has required that regular progress reports be made to it about how its directions to the Civil Service Commission are being implemented. It is reasonably predictable that final resolution of this case is many years and many thousands of dollars and manhours away, notwithstanding the extensive consideration it has already received. This is no small handicap which the court lays upon the conduct of the Nation's business. In attempting to solve what it believes to have been an evil it has created one of considerable dimensions.

(20) The court grants plaintiff relief which he has not asked for and rejects. The court remands the case for a fifth administrative proceeding in the face of a large record already made over a period of several years and on which plaintiff is satisfied to rely. The Executive has already exercised its discretionary function in this case to a greater extent and with more patience than called for by any pertinent order or regulation. Because plaintiff did suffer some discrimination he was given preferential

treatment and promotion notwithstanding a record showing that he did not always perform his assignments well, was lacking in the characteristics of cooperation and stability, was guilty of extensive absenteeism, and was short on technical ability. In view of the existing, extensive administrative record which is supported by substantial evidence, a remand for further proceedings under guidelines which call for speculative considerations in the extreme and which action is taken only because the court improperly assumes jurisdiction of this claim over which it has no jurisdiction, puts an unconstitutional, unconscionable, expensive, time-consuming burden upon both plaintiff and defendant, and it should not be tolerated. Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Koppers Co. v. United States, 405 F.2d 554, 556–557, 186 Ct.Cl. 142, 147–151 (1968); Gnotta v. United States, *supra*.

(21) By its action in disregarding the administrative findings, which do not show that plaintiff was not promoted "but for" discrimination, and in refusing to support the CSC ruling that plaintiff's final appeal was not timely taken, although plaintiff did not even ask for waiver of the time limit, the court without substantial evidence has vitiated the long-honored rule that in discretionary matters the officers of the Government will be presumed to have discharged their duties in a legal and proper manner and in good faith. It takes "irrefragable proof" to overcome the presumption. There is no such proof here. United States v. Chemical Foundation, Inc., 272 U.S. 1, 14, 47 S.Ct. 1, 71 L.Ed. 131 (1926); Grover v. United States, 200 Ct.Cl. 337 (1973); Kozak v. United States, 458 F.2d 39, 40, 198 Ct.Cl. 31, 35 (1972); Knotts v. United States, 121 F.Supp. 630, 631–632, 128 Ct.Cl. 489, 492 (1954).

In conclusion, I agree with *Chief Judge* Cowen and *Judge* Skelton that defendant's motion for summary judgment should be granted, plaintiff's motion should be denied, and the petition should be dismissed.