Bennett, Judge,
delivered the opinion of the court:
Defendant has moved for summary judgment and dismissal of plaintiff’s petition which alleges that plaintiff was the victim of racial discrimination in his civilian employment with the Government. Plaintiff opposes the motion and argues that there are issues of fact requiring a trial. We hold for defendant and reject plaintiff’s demand for back pay: *308 for benefits at a rate based on a higher grade level to which plaintiff alleges he was barred because of racial discrimination; for restoration; and for correction of plaintiff’s record. All facts necessary to decide the motion are before us.
I
During the period relevant to this dispute, plaintiff was a civilian employee of the Naval Supply Depot (N'SD), Seattle, Washington, working as a marine cargo specialist (GS-9). The NSD provided terminal port services for military cargo and passengers using the Seattle port facility. A marine cargo specialist’s duties, as described in agency regulations, include planning for stowage of marine cargo aboard carrier vessels, and maintaining surveillance of loading and discharge operations. Such an employee is concerned with maximum utilization of vessel space, safety of cargo, and efficient use of labor and equipment in the loading and discharge of cargo. Marine cargo specialists may be appointed in grades GS-7 through GS-12, depending on experience and other f actors.
Pursuant to an Interservice Support Agreement, when the NSD provided terminal port services for the Department of the Army at Seattle piers, it would bill the Army, represented by the Military Traffic Management and Terminal Service (MTMTS), for those services. The MTMTS also performed terminal port services at Seattle. On March 6, 1967, it was proposed by MTMTS that its operations in Seattle be merged with some NSD operations in order to prevent duplication of effort. Included in the proposal was the suggested transfer of marine cargo specialist positions from NSD to MTMTS. In contemplation of the proposed merger of operations, six marine cargo specialists (GS-9) and one supervisory marine cargo specialist (GS-11) were “detailed”[1] temporarily from NSD to MTMTS on April 14,1967. Plaintiff was among the six GS-9 employees so detailed and was the only black marine cargo specialist in the group.
*309 The proposed merger of NSD and MTMTS operations was ultimately disapproved by higher authority. As a result, the detail of the seven NSD marine cargo specialists officially ended June 30. Notwithstanding the disapproval, there followed a series of transfers of marine cargo specialists from NSD to MTMTS with the end result that plaintiff remained an NSD marine cargo specialist at the GS-9 level, while the other five of the original group of six GS-9 marine cargo specialists became MTMTS marine cargo specialists at the GS-11 level. Specifically, three of the GS-9 specialists were transferred to MTMTS at grade GS-11 on August 26,1967; the GS-11 supervisory marine cargo specialist was transferred to MTMTS on October 23, 1967; and the remaining two GS-9 specialists were transferred on February 17,1968, and August 3,1968, respectively.
Although never “transferred” to MTMTS, plaintiff was either officially detailed to, or otherwise under the supervision of, MTMTS during the entire period of April 1967 to April 5, 1970. Taking the facts most favorably to plaintiff, as we must do where defendant has moved for summary judgment,[2] plaintiff performed the same duties as those performed by the GS-11 employees of MTMTS during that period, with the exception of the span December 16, 1968 to February 17,1969, during which time plaintiff was assigned to preplanning in the MTMTS office for training. On March 30, 1970, plaintiff’s position at NSD was reclassified as grade GS-11. On April 5 plaintiff was promoted on a temporary basis to the grade of GS-11.
Plaintiff was notified on May 1,1970, that his position was to be abolished as a result of a reduction in force and that this action made him eligible for retirement. Having served 29 years with the Government, plaintiff retired on July 31,
Plaintiff alleges that his continued association with NSD at the GS-9 level until April 5, 1970, while his contemporaries were being transferred to the MTMTS at a grade of GS-11, was the product of racial discrimination. We believe that the facts prove otherwise.
*310 Plaintiff was not transferred to MTMTS and promoted to the grade of GS-11 because the MTMTS believed his work was unsatisfactory. As stated above, plaintiff was relieved of his normal duties on December 16, 1968, and assigned to preplanning in the MTMTS office for training. This was done because plaintiff’s performance had been less than satisfactory, and this additional training was intended to improve that performance. Plaintiff’s supervisor in MTMTS wrote to the NSD on April 29,1969:
2. As a result of the meeting with you in Mid-December, Mr. Funderburg was assigned to assist in preplanning from 16 December 1968 until 17 February 1969 so that he would be available for orientation and be greater exposed to the experience of other Marine Cargo Specialists. The stow plans prepared by Mr. Funderburg during the entire two month period are attached. (Incl 2) An analysis of the work performed shows that the simple plans required revision or were layed out by other personnel. The complicated plans required complete revision and most plans he prepared are unacceptable. Because of the duplication of effort we cannot accept him as a planner. Since returning to the direct supervision of vessels on 17 February 1969 I have summarized all of the vessels under his direction and the apparent conclusion supports the contention that he does not meet the qualifications necessary to fulfill the standards expected of him in this position.
Plaintiff’s performance was also considered to be deficient during the early months of 1969. In that same letter of April 29, his supervisor wrote:
His work record leaves much to be desired as was presented to you over three months ago. That evaluation has not changed for he is completely dependent on others including contract personnel to arrive at any decision. Answering (sic) to questions raised to him are delayed and subsequent investigation reveals that he returned to the job to determine the answer from contract personnel. He does not demonstrate any individual initiative and requires detailed instruction to perform any task. His repetitious errors reflect a lack of knowledge and understanding of the job. His reports are a constant source of correction due to omission or misinterpretation of the stevedore contracts. He lacks the initiative, aggressiveness and fortitude necessary to direct the work of others in this position. * * *.
*311 The above statement by tlie supervisor was followed by 13 specific illustrations of defects in plaintiff’s work, and several contained numerous subsidiary illustrations of specific incompetent work by plaintiff.
On May 19,1969, plaintiff was issued a Letter of Warning by the NSD, based on the April 29 letter from plaintiff’s MTMTS supervisor, a copy of which accompanied the Letter of Warning. The latter stated that plaintiff’s work did not meet the standards necessary to fulfill the duties of plaintiff’s position. He was assured of any assistance required but warned that he must show improvement by August 22,1969, or “other action may be taken.” The MTMTS informed NSD on September 25,1969, however, that plaintiff had “responded favorably” since the Letter of Warning and was now considered to be performing his assigned duties “in a satisfactory manner.” On January 23, 1970, plaintiff was rated as eligible for a within-grade step increase due March 8,1970. On April 1, 1970, plaintiff received a “satisfactory” per: formance rating for the period March 31, 1969 to March 31, 1970. On April 5, plaintiff was promoted to the temporary grade of GS-11, step 1.
Ill
Plaintiff first charged the Government with racial discrimination in a letter, written by his attorney, on June 3, 1969. The “specific complaints” set out in the letter were:
* * * (1) failure to upgrade to GS-11, (2) discriminatory work assignments, and (3) improper conduct and behaviour of the Marine Superintendent, Mr. Maurice.
The MTMTS assigned an investigator to investigate the charges. The report of the investigator, dated July 11, 1969, stated that seven employees had been interviewed, including plaintiff, and 15 personnel files examined. The conclusions reached by the investigator were:
1. It is my opinion that Mr. Funderburg was not selected for GS-11 because he is not qualified, not because he is colored. The record speaks for itself.
2. That Mr. Funderburg has made many costly mistakes that disqualify him for GS-11.
3. That Mr. Funderburg does not have the necessary experience for GS-11.
*312 4. That Mr. Funderburg although given extra help in his work is still far from qualifying for GS-11.
5. That Mr. Funderburg has not exhibited the necessary initiative to prove himself capable and qualified for GS-11.
6. That promotion in MTMTS to GS-11 or any grade is based on ability and qualifications.
_ 7. That no discrimination exists _ in MTMTS against Mr. Funderburg or anyone else, either with regard to the promotion to GS-11 or any other assignment.
The “improper conduct and behaviour” of Mr. Maurice was found to have consisted of using profanity on the docks to all those under his supervision, a not uncommon practice in that line of work. The MTMTS rejected plaintiff’s complaint on August 5. Plaintiff at first appealed that decision to the Civil Service Commission, then on September 4,1969, withdrew the appeal and request for a hearing.
A second racial discrimination complaint was filed by plaintiff on May 23, 1970. The filing of this complaint came after plaintiff had been temporarily promoted to the grade of GS-11 and notified that he would be subject to an impending KIF. Again the crux of the complaint was that he had been performing the same duties while a GS-9 as others who were at the GS-11 grade. His requested relief was retroactive promotion and back pay. Through a misunderstanding due in part to the fact that plaintiff retired from the Government shortly after filing the complaint, the complaint was not at first formally processed. Subsequent communications between the Navy and plaintiff’s attorney, however, resulted in an investigation into the charge, the results of which were reported on April 2, 1971. The investigator, after reciting the facts concluded:
There is basis for Mr. Funderburg’s feeling that he was discriminated against. It is believed that the actual discrimination was done by MTMTS in failing to transfer him to a GS-11 position, the duties of which he was apparently performing.
It must be noted that the investigator did not conclude that there was discrimination due to race, nor was there a shred of evidence elicited in that report of any racial incident or any atmosphere of .racial discrimination. Plaintiff mis- *313 'characterizes the report as raising a triable fact of racial discrimination. The report did not find such discrimination.
Plaintiff’s complaint was thereafter rejected by the Department of the Navy on the grounds that it was untimely filed, that it was automatically canceled (according to applicable regulations) by plaintiff’s retirement for reasons not related to his complaint, and that plaintiff’s requested relief— retroactive promotion and back pay — could not be legally granted. The Civil Service Commission upheld this determination on August 31,1971. Plaintiff challenged the CSC’s decision by suit in the Federal District Court for the Western District of the State of Washington. That court, unhappy with the failure of the agency to make findings of fact to support its decision, remanded the matter to the CSC (and hence to the agency) so that the discrimination complaint might be processed in accordance with law.
The Government thereupon undertook a third investigation of plaintiff’s complaint to resolve these issues: (1) was the complaint timely filed, (2) was plaintiff’s separation (retirement) from the Navy related to his complaint, and (3) was plaintiff denied promotion to GS-11 without due cause? The third investigation report concluded that all three questions were answerable in the negative. Plaintiff’s “delay” [3] in promotion to grade GS-11 was found to be the result of his unsatisfactory performance. On the basis of this report, plaintiff’s complaint was again denied. On appeal, the Secretary of the Navy on February 4,1974, concurred in the denial. Plaintiff was advised by the Secretary of his right to appeal to the CSC within 15 days or to sue in the district court within 30 days. Plaintiff did neither but filed his petition in this court on March 7,1974,[4] demanding back *314 pay and restoration of all lost employment benefits arising from the alleged discrimination.
IV
In all of the record before this court, including 43 exhibits of the parties, there is not a single, specific instance of racial discrimination that has been brought to our attention. Plaintiff relies solely on the fact, which we have assumed to be true, that for a certain period of time, he was performing duties, while being paid at the GS-9 level, that others were performing while paid at grade GS-11. The evidence shows, however, that this “discrimination” in grade levels was the product of plaintiff’s unsatisfactory performance record. There is no basis for believing that race was a factor.
Plaintiff’s affidavit to the court, one of the 43 exhibits referred to above, includes the following statement:
I was the only black and the only Marine Cargo Specialist at the GS-9 rating. I was continually subject to ridicule and harassment. I was the recipient of racist comments. * * *.
The above statement does not allege racial discrimination against plaintiff’s supervisors which prevented or delayed plaintiff’s promotion. But even if it were so read, it would be insufficient to prevent the issuance of summary judgment for defendant on the basis of the extensive, detailed record before us. Our case of Burton v. United States, 186 Ct. Cl. 172, 404 F. 2d 365 (1968), cert. denied, 394 U.S. 1002 (1969), which also involved a motion for summary judgment founded on a claim of racial discrimination, is closely on point. In it we said at 186-87 (404 F. 2d at 373):
We recognize that our analysis of the case might all be valid and still there might be a triable issue of fact. This would be the case, e.g., if plaintiff intended by oral testimony, his own or that of others, to contradict, explain, or modify the story that emerges so plainly from the record. The trouble is, under Eule 64 [presently Eule 101(f)], plaintiff is required, in opposing the motion for summary judgment, to set forth specific facts showing there is a triable issue.
*315 In all this lengthy record there is no evidence that any person or persons concerned with the promotion of plaintiff, his separation from service, and the review by the CSC, acted with a racial bias against plaintiff. In Madison, supra, at p. 989, we said that imputations of bad faith or malevolence by the employee against management preclude summary judgment and raise a triable issue “if plaintiff has shown enough to call for a trial on that issue.” It is our considered judgment here that plaintiff has not shown enough, or indeed, anything at all. * * * [Cf. FRCP 56(e).]
On many other occasions we have said that mere formal denials and general allegations are insufficient to prevent the award of summary judgment. See, e.g., Pacific Far East Line, Inc. v. United States, 206 Ct. Cl. 378, 513 F. 2d 1355 (1975); Walker v. United States, 192 Ct. Cl. 805, 810, 428 F. 2d 1229, 1231 (1970).
Furthermore, plaintiff does not show all of the elements which were found in Pettit v. United States, 203 Ct. Cl. 207, 488 F. 2d 1026 (1973), to make out a prima facie case of racial discrimination.[5]
Plaintiff says that he does not dispute the need to show the requirements established by Pettit but insists that they have been satisfied. Yet, there is no allegation that “the supervisory level employees having responsibility to exercise judgment mider the promotion system betrayed in other matters a predisposition towards discrimination against members of the involved minority.” Assuming, therefore, that Pettit is a viable precedent, plaintiff has not, as he alleges, brought his case within the guidelines of that decision.[6] Nor does plaintiff specifically attempt to refute defendant’s position that plaintiff’s job performance was unsatisfactory, i.e., that plaintiff was not qualified for promotion.
*316 V
Unable to sustain his claim of racial discrimination, plaintiff’s claim for back pay must fail. Except where there is legal entitlement to a higher position, which is not the case here, a Government employee is entitled only to the salary of the position to which he is appointed, regardless of the duties he actually performs. Hirsch v. United States, 205 Ct. Cl. 256, 499 F. 2d 1248 (1974); Ganse v. United States, 180 Ct. Cl. 183, 376 F. 2d 900 (1967); Tierney v. United States, 168 Ct. Cl. 77 (1964); Price v. United States, 112 Ct. Cl. 198, 80 F. Supp. 542 (1948).
Defendant’s motion for summary judgment is granted. Plaintiff’s petition is dismissed.

 It should be understood that an employee who was “detailed" to MTMTS remained a Navy employee, though under the supervision of the Army. An employee “transferred” to MTMTS, on the other hand, became an Army employee.

 United States v. Diebold, Inc., 369 U.S. 654 (1962).

 Though not a factor in our decision herein, it is interesting to note that from February 1966 to April 1970, a period of only 4 years, plaintiff rose from grade WB-5 to grade GS-11. Because of the Whitten Amendment, 65 Stat. 758 (11310(c) and (d)); 5 U.S.C. §3101 Notes, plaintiff could not have been promoted to grade GS-11 until March 12, 1968, 1 year after he had been promoted from GS-7 to GS-9.

 Plaintiff’s failure to appeal first to the CSC is alleged by defendant to be a failure to exhaust administrative remedies for which the petition should be dismissed. Our decision against plaintiff on the merits obviates consideration of that issue. For the same reason, we do not discusB plaintiff’s questionable implication that we could promote and reclassify Mm as a basis for granting the relief he claims.

 In Pettit, this court stated at 220 (488 F. 2d at 1033) :
“* * * We, therefore, hold that a prima facie case of failure to promote because of racial discrimination is made by showing: (i) that plaintiff belongs to a racial minority, (ii) that he was qualified for promotion and might have reasonably expected selection for promotion under the defendant’s on-going competitive promotion system, (iii) that he was not promoted, and (iv) the supervisory level employees having responsibility to exercise judgment under the promotion system betrayed in other matters a predisposition towards discrimination against members of the involved minority. * *

 The author of the instant opinion dissented in Pettitj a case in which the court was divided 4-3.